TACHA, Chief Judge.
The defendants appeal from the district court’s order denying their motion for summary judgment based on the defense of qualified immunity. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and reverse.
I. Background
The following facts are undisputed. On June 10, 1996, a bail bondsman went to Plaintiff Ernest Medina’s residence to take Mr. Medina into custody for a bail bond violation. When Mr. Medina saw the bondsman, he put his right hand behind his back and said he had a gun. The bondsman subsequently retreated and called the police. As numerous officers, including Defendant Officers Cram and Bruning, began arriving at the scene, Mr. Medina refused to leave the house and began using cocaine and drinking rum. In *1127 addition to receiving phone calls from the police, Mr. Medina made other phone calls, including one to a friend whom he asked to bring him a syringe so that he could “get high” and a gun so that he could “make a break.” In one phone conversation, Officer Bruning tried to convince Mr. Medina to leave the house peacefully, but Mr. Medina said he needed time and told Officer Bruning that he had a gun. During this time, Mr. Medina experienced suicidal thoughts, eventually cutting his left wrist with a knife.
Mr. Medina finally emerged from the house with his left hand in a cup and his right hand wrapped in a towel concealing a staple gun, which Mr. Medina intended as a representation of a weapon. Although officers ordered Mr. Medina to stop, he continued to walk toward and into the street. The officers first used non-lethal beanbag rounds to stop Mr. Medina. When that was unsuccessful, an officer released an attack dog, which bit him and released, returning to the officer. At this time, Officer Cram was following Mr. Medina, planning to stop him by knocking him to the ground. As Officer Cram was communicating his plan to his fellow officers, the attack dog was released the second time. Mr. Medina subsequently dropped to the ground and exposed the staple gun, which officers at the scene believed to be a gun. As he did so, he turned to the left, causing Officer Cram to conclude he and other officers were in the line of fire. From a distance of approximately eight to ten feet, Officer Cram then fired a three-round burst from his automatic weapon, hitting Mr. Medina in the stomach. In addition, Officer Bruning fired two shots at the center of Mr. Medina’s body from a distance of approximately ten to twelve feet. Shortly thereafter, Mr. Medina was taken to the hospital where he survived his injuries.
Claiming Officers Cram and Bruning used excessive force in violation of his Fourth Amendment rights, Mr. Medina brought suit in district court pursuant to 42 U.S.C. § 1983. Mr. Medina also brought a § 1983 action against the City of Colorado Springs for maintaining policies that foster excessive use of force and for failing to adequately train police officers. The district court denied the officer defendants’ motions for summary judgment, concluding genuine issues of material fact remain regarding whether the officers’ actions were objectively reasonable under the circumstances.
II. Standard of Review in Qualified Immunity Cases
Although actions for damages provide an important remedy for individuals injured by governmental officials’ abuse of authority, such actions • sometimes subject officials to costly and harassing litigation and potentially inhibit officials in performing their official duties. Anderson v. Creighton, 483 U.S. 635, 638, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987); Harlow v. Fitzgerald, 457 U.S. 800, 814, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). In order to balance these competing interests, courts recognize the affirmative defense of qualified immunity, which protects “all but the plainly incompetent or those who knowingly violate the law.” Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). The Supreme Court has emphasized the broad protection qualified immunity affords, giving officials “a right, not merely to avoid ‘standing trial,’ but also to avoid the burdens of ‘such pretrial matters as discovery.’ ” Behrens v. Pelletier, 516 U.S. 299, 308, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996) (quoting Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985)). Consequently, courts should resolve the “purely legal question,” Siegert v. Gilley, 500 U.S. 226, 232, 111 *1128 S.Ct. 1789, 114 L.Ed.2d 277 (1991), raised by a qualified immunity defense “ ‘at the earliest possible stage in litigation.’ ” Albright v. Rodriguez, 51 F.3d 1531, 1534 (10th Cir.1995) (quoting Hunter v. Bryant, 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991)).
We review the denial of a summary judgment motion raising qualified immunity questions de novo. Wilson v. Meeks, 52 F.3d 1547, 1551 (10th Cir.1995) [hereinafter Wilson I ]; Bella v. Chamberlain, 24 F.3d 1251, 1254 (10th Cir.1994). Because of the underlying purposes of qualified immunity, we review summary judgment orders deciding qualified immunity questions differently from other summary judgment decisions. Nelson v. McMullen, 207 F.3d 1202, 1205-06 (10th Cir.2000). After a defendant asserts a qualified immunity defense, the burden shifts to the plaintiff. Scull v. New Mexico, 236 F.3d 588, 595 (10th Cir.2000); Adkins v. Rodriguez, 59 F.3d 1034, 1036 (10th Cir.1995). Applying the same standards as the district court, we must determine whether the plaintiff has satisfied a “heavy two-part burden.” Albright, 51 F.3d at 1534; accord Wilson I, 52 F.3d at 1552. The plaintiff must first establish “that the defendant’s actions violated a constitutional or statutory right.” Al-bright, 51 F.3d at 1534; see also Wilson v. Layne, 526 U.S. 603, 609, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999) (noting the court must first decide whether the plaintiff has alleged deprivation of a constitutional right). If the plaintiff establishes a violation of a constitutional or statutory right, he must then demonstrate that the right at issue was clearly established at the time of the defendant’s unlawful conduct. Al-bright, 51 F.3d at 1534. In determining whether the right was “clearly established,” the court assesses the objective legal reasonableness of the action at the time of the alleged violation and asks whether “the right [was] sufficiently clear that a reasonable officer would understand that what he is doing violates that right.” Wilson v. Layne, 526 U.S. at 615, 119 S.Ct. 1692 (internal quotation marks omitted).
This two-step analysis “is designed to ‘spare a defendant not only unwarranted liability, but unwarranted demands customarily imposed upon those defending a long drawn-out lawsuit.’ ” Wilson v. Layne, 526 U.S. at 609, 119 S.Ct. 1692 (quoting Siegert, 500 U.S. at 232, 111 S.Ct. 1789). If the plaintiff fails to satisfy either part of the two-part inquiry, the court must grant the defendant qualified immunity. Albright, 51 F.3d at 1535. If the plaintiff successfully establishes the violation of a clearly established right, the burden shifts to the defendant, who must prove “ ‘that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law.’ ” Id. (quoting Hinton v. City of Elwood, 997 F.2d 774, 779 (10th Cir.1993)). In short, although we will review the evidence in the light most favorable to the nonmoving party, Nelson, 207 F.3d at 1205, the record must clearly demonstrate the plaintiff has satisfied his heavy two-part burden; otherwise, the defendants are entitled to qualified immunity.
This circuit previously required plaintiffs to meet a heightened pleading standard when subjective intent is at issue and the defendant raises a qualified immunity defense. See, e.g., Breidenbach v. Bolish, 126 F.3d 1288 (10th Cir.1997). We recently held that the heightened pleading requirement does not survive the Supreme Court’s opinion in Crawford-El v. Britton, 523 U.S. 574, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998). Currier v. Doran, 242 F.3d 905, 2001 WL 202045 (10th Cir. Mar.1, 2001). Our decision in Currier is not, however, directly implicated in this case because we review the issues presented here *1129 in the context of summary judgment. Furthermore, unlike the dissent, we conclude Crawford-El does not affect our approach to qualified immunity questions at the summary judgment stage.
Crawford-El should be read narrowly in light of the specific issue before the Court. The Court repeatedly noted that it was addressing standards of proof in the context of the merits of a constitutional claim involving improper motive, rather than in the context of a qualified immunity defense: “The court’s clear and convincing evidence requirement applies to the plaintiffs showing of improper intent (a pure issue of fact), not to the separate qualified immunity question whether the official’s alleged conduct violated clearly established law, which is an ‘essentially legal question.’ ” Crawford-El, 523 U.S. at 589, 118 S.Ct. 1584 (emphasis added). The Court distinguished Harlow and the qualified immunity context, concluding that, “unlike Harlow, the proper balance does not justify a judicial revision of the law to bar claims that depend on proof of an official’s motive.” Id. at 592, 118 S.Ct. 1584 (emphasis added). According to the Court, the dangers presented by a subjective standard in the qualified immunity context (primarily the danger that officials would be subjected to insubstantial claims) are not present in the context of claims involving improper intent. Id. at 593, 118 S.Ct. 1584. Hence, to apply Cratvford-EVs holding to qualified immunity would be to do what the Court explicitly cautioned against: it would conflate two distinct contexts.
The dissent quotes the Court’s observation in Craioford-El that a heightened burden for constitutional claims involving improper motive “lacks any common-law pedigree,” as well as statutory support. Id. at 594-95, 118 S.Ct. 1584. But although the Court emphasized the lack of support (especially in the federal rules) for the heightened burden in Crawford-El, it also recognized the unique nature of qualified immunity as a creature separate from the federal rules: “in Harlow ... we were engaged in a process of adjudication that we had consistently and repeatedly viewed as appropriate for judicial decision-a process predicated upon a considered inquiry into the immunity historically accorded the relevant official at common law and the interests behind it.” Id. at 594, 118 S.Ct. 1584 (internal quotation marks omitted). Hence, the Court’s holding only prohibits judicial revision of rules “separate from the qualified immunity defense” and does not disturb the case law governing qualified immunity. Id. at 595, 118 S.Ct. 1584 (emphasis added).
The dissent therefore reads Crawfordr-El too broadly and fails to apply Supreme Court precedent emphasizing the unique nature of a qualified immunity defense. See, e.g., Mitchell, 472 U.S. at 526, 105 S.Ct. 2806 (characterizing qualified immunity as “an entitlement not to stand trial or face the other burdens of litigation” and as “an immunity from suit rather than a mere defense to liability”). The assertion of qualified immunity raises a rebuttable presumption, a proposition recognized by the Court in Crawford-El as one of the three propositions informing Harlow’s, definition of qualified immunity. Crawford-El, 523 U.S. at 587, 118 S.Ct. 1584 (“[W]e presumed that the defense protects all officers in the executive branch of government performing discretionary functions, but held that the presumption was rebuttable.” (citations omitted)). A rebuttable presumption necessarily shifts the burden from the party favored by the presumption to the party rebutting it. Hence, our cases recognizing a plaintiffs “two-part burden” are logical explanations of the practical effect of a qualified immunity defense, rather than a judicial revision *1130 of the federal rules. As the Court has said, once qualified immunity is asserted, “plaintiffs may not play dog in the manger.” Harlow, 457 U.S. at 808, 102 S.Ct. 2727 (internal quotation marks omitted). Consequently, in order for Mr. Medina’s claim to survive summary judgment, the record must contain facts that rebut the presumption of the officers’ immunity from suit.
III. Jurisdiction: Immediate Appeal from Denial of Summary Judgment in Qualified Immunity Cases
A district court’s denial of a defendant’s summary judgment motion based on qualified immunity is an immediately appealable “collateral order” when the issue appealed concerns whether certain facts demonstrate a violation of clearly established law. Mitchell v. Forsyth, 472 U.S. 511, 527-28, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985) (concluding summary judgment order deciding qualified immunity issues satisfies the test from Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), because it is “effectively unreviewable,” separate from the merits, and “conclusively” settles the issue of a defendant’s immunity from suit). The Supreme Court has, however, cautioned that not every denial of summary judgment following the assertion of qualified immunity is immediately appealable. Johnson v. Jones, 515 U.S. 304, 313, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995). Courts of appeals clearly lack jurisdiction to review summary judgment orders deciding qualified immunity questions solely on the basis of evidence sufficiency — “which facts a party may, or may not, be able to prove at trial.” Id. Consequently, an order will not be immediately appealable unless it “presentís] more abstract issues of law.” Id. at 317, 115 S.Ct. 2151.
Hence, we have observed that defendants may not immediately appeal a pretrial order deciding “nothing more than whether the evidence could support a finding that particular conduct occurred.” Foote v. Spiegel, 118 F.3d 1416, 1422 (10th Cir.1997). We need not, however, decline review of a pretrial order denying summary judgment solely because the district court says genuine issues of material fact remain; instead, we lack jurisdiction only if our review would require second-guessing the district court’s determinations of evidence sufficiency. Behrens v. Pelletier, 516 U.S. 299, 312-13, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996) (“Denial of summary judgment often includes a determination that there are controverted issues of material fact ... and Johnson surely does not mean that every such denial of summary judgment is nonappealable.”). An order denying summary judgment based on qualified immunity necessarily involves a legal determination that certain alleged actions violate clearly established law. Id. at 313., 115 S.Ct. 2151 Defendants may therefore assert “on appeal that all of the conduct which the District court deemed sufficiently supported for purposes of summary judgment” meets the applicable legal standards. Id. Even when the district court concludes issues of material fact exist, we have reviewed the legal question of whether a defendant’s conduct, as alleged by the plaintiff, violates clearly established law. Malik v. Arapahoe County Dep’t of Soc. Servs., 191 F.3d 1306, 1315 (10th Cir.1999); Clanton v. Cooper, 129 F.3d 1147, 1153 (10th Cir.1997); see also Wilson v. Meeks, 98 F.3d 1247, 1251-52 (10th Cir.1996) [hereinafter Wilson II] (noting that — following Johnson and Behrens— other circuits characterize review of whether the plaintiffs version of the facts establishes a constitutional violation as a legal question, which is immediately appealable).
*1131 In this case, we need not rely solely on Mr. Medina’s version of the facts because the district court found the material facts were not in dispute. Despite this finding, however, the court apparently determined that issues of material fact remain regarding the objective reasonableness of the officers’ actions. Whether the officers acted reasonably, however, is a legal determination in the absence of disputed material facts. Although the reasonableness standard is inevitably fact dependent, Wilson I, 52 F.3d at 1553, it should not be reserved for the jury in the absence of disputed material facts. Because qualified immunity is a question of law to be resolved at the earliest possible stage of litigation, courts often engage in determinations of reasonableness under the Fourth Amendment, necessarily applying the undisputed material facts to the legal standards.
IV. Excessive Force Claim
Claims of excessive force are analyzed under the objective reasonableness standard of the Fourth Amendment. Graham v. Connor, 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). The reasonableness of an officer’s conduct must be assessed “from the perspective of a reasonable officer on the scene,” recognizing the fact that the officer may be “forced to make split-second judgments” under stressful and dangerous conditions. Id. at 396-97, 109 S.Ct. 1865. The Fourth Amendment standard requires inquiry into the factual circumstances of every case; relevant factors include the crime’s severity, the potential threat posed by the suspect to the officer’s and others’ safety, and the suspect’s attempts to resist or evade arrest. Id. at 396, 109 S.Ct. 1865. The reasonableness standard is “clearly established” in the context of § 1983 actions. Wilson I, 52 F.3d at 1552.
We have recognized that the reasonableness inquiry in excessive force cases overlaps with the qualified immunity question, which also requires the application of a reasonableness standard in order to determine whether an officer violated a clearly established right. Kg., id.; Quezada v. County of Bernalillo, 944 F.2d 710, 718 (10th Cir.1991). In addition, we have suggested this overlap renders a qualified immunity defense of less value when raised in defense of an excessive force claim. E.g., Quezada, 944 F.2d at 718. But regardless of the redundancy in analyses, the overlap does not relieve us of our responsibility to decide the legal questions raised by qualified immunity; it does not transform legal standards applied to undisputed material facts into factual questions necessitating further discovery.
In the absence of disputed material facts, courts often decide questions of reasonableness early in the litigation in order to resolve the “legal question” presented by a qualified immunity defense. Although the Supreme Court has noted the fact-specific nature of a reasonableness inquiry, it has continued to urge the early resolution of reasonableness questions in the context of qualified immunity. See, e.g., Anderson v. Creighton, 483 U.S. 635, 641, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) (noting the “objective (albeit fact-specific ) question whether a reasonable officer could have believed Anderson’s warrant-less search to be lawful” and resolving the question as a matter of law (emphasis added)). In fact, the Court has rejected an approach to qualified immunity that would treat Fourth Amendment claims differently from other constitutional claims. See id. at 643-44, 107 S.Ct. 3034. Because the material facts in this case are undisputed, we must follow the Court’s approach to qualified immunity and decide whether the defendants’ actions were reasonable as a matter of law.
*1132 Mr. Medina specifically claims that the officers acted unreasonably in creating the need to use force. In addition to considering whether the officers reasonably believed they were in danger at the time they used force, we have considered “ ‘whether [the officers’] own reckless or deliberate conduct during the seizure unreasonably created the need to use such force.’ ” Allen v. Muskogee, 119 F.3d 837, 840 (10th Cir.1997) (quoting Sevier v. City of Lawrence, 60 F.3d 695, 699 (10th Cir.1995)). An officer’s conduct before the suspect threatens force is therefore relevant provided it is “immediately connected” to the seizure and the threat of force. Id.; Romero v. Bd. of County Comm’rs, 60 F.3d 702, 705 n. 5 (10th Cir.1995); see also Bella, 24 F.3d at 1256 (“Obviously, events immediately connected with the actual seizure are taken into account in determining whether the seizure is reasonable.”). This approach is simply a specific application of the “totality of the circumstances” approach inherent in the Fourth Amendment’s reasonableness standard. See Tennessee v. Gamer, 471 U.S. 1, 8-9,105 S.Ct. 1694, 85 L.Ed.2d 1 (1985) (recognizing courts should ask “whether the totality of the circumstances justified a particular sort of search or seizure”). We emphasize, however, that, in order to constitute excessive force, the conduct arguably creating the need for force must be immediately connected with the seizure and must rise to the level of recklessness, rather than negligence. The primary focus of our inquiry, therefore, remains on whether the officer was in danger at the exact moment of the threat of force. Bella, 24 F.3d at 1256 & n. 7 (refusing to scrutinize events occurring one hour before the actual seizure and noting the events were not immediately connected with the seizure); see also Wilson I, 52 F.3d at 1554 (citing cases from other circuits confining inquiry to moment of threat).
According to Mr. Medina, the officers’ actions after he left the house and began walking toward the street constituted reckless and deliberate conduct giving rise to the threat of force. Specifically, he argues the officers should have remained under cover rather than following him in an attempt to knock him to the ground. He apparently argues that their failure to take cover was particularly reckless in light of the attack dog’s release, which increased the risk of force. We have, however, suggested that an officer’s failure to take cover is “at issue only insofar as it [bears] upon whether the officer’s life [is] truly in danger.” Wilson I, 52 F.3d at 1554. Moreover, even if we were to consider whether an officer’s failure to take cover contributed to the need for force, Mr. Medina has clearly failed to establish that the officers’ actions in this case rise to the level of reckless or deliberate conduct. See Romero, 60 F.3d at 704-05 (rejecting plaintiffs argument that officer acted unreasonably in using deadly force in self-defense after not handcuffing suspect); see also Sevier, 60 F.3d at 699 n. 7 (“Mere negligent action precipitating a confrontation would not, of course, be actionable under § 1983.”). In this case, Mr. Medina communicated he had a gun, emerged from the house covering what could reasonably be interpreted as a weapon, and began walking away from the house into the street. The officers’ response in attempting to stop Mr. Medina was reasonable under the circumstances. Mr. Medina has, therefore, failed to establish that the defendants violated his Fourth Amendment rights.
Moreover, contrary to the district court’s opinion, our decision Allen v. Muskogee, 119 F.3d 837 (10th Cir.1997), does not support the district court’s conclusion that genuine issues of material fact remain. In Allen, although we recognized that the officers’ conduct prior to the use *1133 of force could be included in the reasonableness inquiry, we identified a specific dispute of material fact regarding eyewitness testimony. Id. at 841. Indeed, even the defendants admitted the eyewitness depositions contained differences concerning the officers’ approach of the suspect immediately prior to the threat of force. Id. In addition, Allen contains no indication that the defendants raised a qualified immunity defense; the defendants’ summary judgment motion was, therefore, judged under the typical summary judgment standard, which requires a lesser showing by the plaintiff.
V. Expert Affidavit
In response to the defendants’ assertion of a qualified immunity defense, Mr. Medina submitted an affidavit of an expert, which he argues supports his contention that genuine issues of material fact exist in this case. The expert’s affidavit does not, however, highlight a disputed issue of fact; rather, it simply contains the ultimate conclusion that the officers’ use of force did not conform with accepted police guidelines and practices and was, therefore, excessive. We have, of course, recognized that claims based on violations of state law and police procedure are not actionable under § 1983. Romero, 60 F.3d at 705 (state law and police procedure); Wilson I, 52 F.3d at 1554 (police department regulation); see also Davis v. Scherer, 468 U.S. 183, 194-96, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984) (rejecting the argument that § 1983 liability may be based solely on a violation of a state statute or regulation). Moreover, the reasonableness standard does not require that officers use “alternative ‘less intrusive’ means.” Illinois v. Lafayette, 462 U.S. 640, 647-48, 103 S.Ct. 2605, 77 L.Ed.2d 65 (1983). If we were to follow the dissent’s approach and consider the expert’s assertions regarding the failure to use pepper spray and other tactical measures, we would be evaluating the officers’ conduct from the [2]%o perspective of hindsight rather than from the perspective of an officer making split-second judgments on the scene.
Furthermore, the expert based his opinion generally on his knowledge of various documents, rather than presenting specific facts, and did not indicate whether his conclusion rests on a finding that the officers acted recklessly, as opposed to negligently. We therefore follow the well-settled principle that an expert opinion may not be sufficient to overcome summary judgment if “it is conclusory and thus fails to raise a genuine issue of material fact.” Matthiesen v. Banc One Mortgage Corp., 173 F.3d 1242, 1247 (10th Cir.1999); accord Hayes v. Douglas Dynamics, Inc., 8 F.3d 88, 92 (1st Cir.1993); Evers v. General Motors Corp., 770 F.2d 984, 986 (11th Cir.1985); Merit Motors, Inc. v. Chrysler Corp., 569 F.2d 666, 673 (D.C.Cir.1977). The general conclusions of Mr. Medina’s expert clearly fail to raise a genuine issue of material fact.
Because Mr. Medina has failed to satisfy his burden in overcoming the officers’ assertion of qualified immunity, we REVERSE the district court’s order finding genuine issues of material fact and REMAND with instructions to enter judgment in favor of the officer defendants.

. I recognize, of course, that "on summary judgment, the court may make a determination as to reasonableness when, viewing the evidence in the light most favorable to [the plaintiff], the evidence compels the conclusion that [the officer’s] use of force was reasonable.” Katz v. United States, 194 F.3d 962, 970 n. 5 (9th Cir.1999), cert. granted sub nom. Saucier v. Katz,-U.S.-, 121 S.Ct. 480, 148 L.Ed.2d 454 (2000). While summary judgment may be available in excessive force cases, those cases are rare and the evidence, when viewed most favorably to the plaintiff, must be compellingly in favor of the defendant. As I discuss below, I am not persuaded the evidence presents those circumstances here.