FILED
**United States Court of Appeals**
**Tenth Circuit**

**October 3, 2012**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

EDUARDO ARENCIBIA,

      Plaintiff - Appellant,

v.

RICHARD BARTA; TRACEY
TRAMMEL; BRAD METZ; PHIL
HIGDON; SAM LEONE; MICHAEL
KOLBEK,

      Defendants - Appellees.

No. 11-3376
(D.C. No. 2:09-CV-02581-KHV)
(D. Kan.)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **HOLLOWAY,** and **MATHESON**, Circuit Judges.

In 2009, Plaintiff-Appellant Eduardo Arencibia filed a 42 U.S.C.§ 1983 action

against Richard Barta, Tracey Trammel, Brad Metz, Phil Higdon, Sam Leone, and

Michael Kolbek (collectively, the "Defendants"), all officers with the Shawnee County

Sheriff's Department. Mr. Arencibia claimed the Defendants violated his Fourth

Amendment right to be free from unlawful search and seizure during a traffic stop. The

---

      * This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

district court granted the Defendants' motion for summary judgment based on qualified immunity, and Mr. Arencibia appealed.  Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I.    BACKGROUND

### A. *Factual History*

On November 7, 2007, Deputy Trammel stopped Mr. Arencibia's semi-truck for "failure to maintain a single lane," a traffic violation.  *Arencibia v. Barta*, 09-CV-2581-KHV, 2011 WL 5827634, at *2 (D. Kan. Nov. 18, 2011).  While walking to the front of the truck to speak with Mr. Arencibia, Deputy Trammel observed signs of "ghosting," where several different logos have been removed from the side of the trailer.[1]  Deputy Trammel entered the cab of Mr. Arencibia's truck on the passenger side to ask where he was going and whether he was having mechanical problems.  Mr. Arencibia appeared excessively nervous and gave Deputy Trammel several inconsistent answers.  When Deputy Trammel asked whether he was having mechanical trouble, Mr. Arencibia initially said he was not.  He later said he was having engine problems and had taken the truck to a mechanic in New Jersey but had not had the truck fixed.[2]  When asked what he was hauling, Mr. Arencibia initially said he had no bill of lading and was returning from

---

[1] Deputy Trammel testified that ghosting is a sign the truck has changed owners several times and might have been involved in narcotics trafficking.

[2] Mr. Arencibia was unable to produce any documentation of the $4,000 estimate for the truck repair.  [Aplt. App. at 34.]

hauling watermelons to Massachusetts.  But a bill of lading, which Mr. Arencibia produced a few minutes later, listed cantaloupes as the cargo.

In addition to Mr. Arencibia's nervousness and inconsistent responses, Deputy Trammel observed several "red flags" that made him suspect Mr. Arencibia was involved in illegal activity.  For example, the deputy did not believe a truck driver would drive an empty truck cross-country, resulting in a profit loss, or that he would willingly drive a truck with known engine problems and risk the "astronomical" towing costs that would be incurred if it broke down.  *Id.* at 3.  Deputy Trammel, a former truck driver, knew it was not common practice in the industry to lock an empty truck, and Mr. Arencibia locked his truck even though he claimed it was empty.

Deputy Trammel also saw inconsistencies with the dates in Mr. Arencibia's log book and found a truck weigh ticket from Albuquerque, New Mexico, but not one from Phoenix, where Deputy Trammel thought he should have weighed the truck.  Finally, Deputy Trammel noticed that Mr. Arencibia had recently retitled the truck.  Mr. Arencibia said he had purchased the truck from a friend, whose name he could not remember, and he was paying the friend in installments.  Deputy Trammel found the payment arrangement suspect because drug carriers often retitle trucks and because the seller had no recourse if Mr. Arencibia defaulted on his payments.  All of these

discrepancies, combined with Deputy Trammel's knowledge of truck driving practices,[3] made him suspect Mr. Arencibia was involved in illegal activity.

In addition to taking Mr. Arencibia's license, registration, logbook, and other paperwork back to his car to run routine checks, Deputy Trammel called the El Paso Intelligence Center ("EPIC")[4] to check on Mr. Arencibia's immigration status and inquire about any warrants or prior case involvement. Deputy Trammel learned that in 2004, Mr. Arencibia had been a passenger in a truck from which law enforcement officers seized large quantities of cocaine and marijuana. Deputy Trammel believed Mr. Arencibia was arrested in that incident.

After Deputy Trammel ran the background search, at least three other officers had arrived, including Sergeant Metz. Before returning to Mr. Arencibia's truck, Deputy Trammel told Sergeant Metz about his suspicions that Mr. Arencibia was transporting drugs, listing all the "red flags" he had noted.

Deputy Trammel then returned to the cab of Mr. Arencibia's truck, issued Mr. Arencibia a warning, returned his driver's license and other paperwork, and said, "I

---

[3] At the time of the stop, Deputy Trammel was an instructor in prevention of drug trafficking and held a commercial truck driver's license.

[4] EPIC is a federally funded and managed facility that provides information from a database of criminal and immigration information.

appreciate it." *Arencibia*, 2011 WL 5827634 at *4.[5] He did not specifically tell Mr. Arencibia he was free to leave. Without leaving the truck, Deputy Trammel asked whether he could ask Mr. Arencibia a few more questions, and Mr. Arencibia said, "Yeah, go ahead." *Id.* Deputy Trammel asked Mr. Arencibia about the inconsistencies on the weigh ticket. Mr. Arencibia explained that he had been trying to fix a weight distribution problem. Deputy Trammel also asked Mr. Arencibia whether he had ever been arrested, and Mr. Arencibia said he had not. Finally, Deputy Trammel asked Mr. Arencibia whether he possessed illegal contraband or money, and Mr. Arencibia said he did not. Deputy Trammel then obtained Mr. Arencibia's consent to search the truck.

Deputy Trammel asked Mr. Arencibia to exit the truck and patted him down. He found $1,200 in $10 bills, secured with rubber bands, in Mr. Arencibia's pocket. Deputy Trammel obtained the keys for the trailer from Mr. Arencibia and reconfirmed that he had consent to search the truck. Deputy Trammel and Sergeant Metz searched the trailer and cab of the truck and found a duffle bag in the cabin containing money, which was packed with fabric softener sheets and bundled with rubber bands. The money was packaged in a way that matched the appearance of other drug proceeds Deputy Trammel had seen. Deputy Trammel arrested Mr. Arencibia for possession of drug proceeds, and

---

[5] The record shows that when Deputy Trammel returned to the cab of Mr. Arencibia's truck with his paperwork, he was either standing on the running board or sitting in the cab of the truck to speak with him.

another officer transported him to the Law Enforcement Center ("LEC"), where Sergeant Higdon interviewed Mr. Arencibia with the help of a translator.

Deputy Trammel drove Mr. Arencibia's truck to the sheriff's office shop, approximately seven miles from where he had stopped Mr. Arencibia. He experienced no mechanical issues along the way. At the shop, Deputy Trammel searched the truck again and found another bag of money, several prepaid cell phones, and a bundle of weigh station tickets from Phoenix. A certified narcotic detection dog alerted to the presence of narcotic odor on the bags of money. Deputy Trammel and Sergeant Metz drove the money to the LEC.

B. *Procedural History*

On November 9, 2007, the Shawnee County District Attorney began proceedings seeking forfeiture of Mr. Arencibia's truck, trailer, and currency. The state district court judge found no constitutional violation and determined Mr. Arencibia had no valid claim to the money. The court ordered the forfeiture of the money to the state but returned Mr. Arencibia's truck and trailer. The Kansas Court of Appeals affirmed. On November 14, 2007, the District Attorney filed a criminal complaint charging Mr. Arencibia with possession of drug proceeds. On May 30, 2008, a state district court judge dismissed the criminal charges because the money was in circulation and could not be obtained for discovery.

On November 6, 2009, Mr. Arencibia filed a suit against the Defendants for damages under 42 U.S.C. § 1983, claiming, among other things, that they had violated his

Fourth Amendment rights. The district court granted the Defendants' motion for summary judgment on November 18, 2011, ruling that Mr. Arencibia's Fourth Amendment rights were not clearly established and that the Defendants were entitled to qualified immunity. Mr. Arencibia filed a timely appeal.

## II.   DISCUSSION

Mr. Arencibia appeals the district court's grant of summary judgment.[6] He does not dispute the constitutionality of his initial traffic stop or the subsequent search. He challenges his detention by Deputy Trammel, after his papers were returned, as an unreasonable seizure under the Fourth Amendment. The district court determined that the Defendants were entitled to qualified immunity because Mr. Arencibia did not establish that the Defendants violated his clearly established constitutional rights.

We review the district court's grant of summary judgment de novo, using the same standard as the district court, and "may affirm the district court's order on any grounds adequately presented below." *Medina v. City & Cnty of Denver*, 960 F.2d 1493, 1500 (10th Cir. 1992) *overruled on other grounds by Morris v. Noe*, 672 F.3d 1185, 1197 n.5 (10th Cir. 2012). Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *McCarty v. Gilchrist*, 646 F.3d 1281, 1284-85

---

[6] The Defendants argue that collateral estoppel bars Mr. Arencibia from bringing his § 1983 claims. Because we affirm the district court's qualified immunity determination, we need not reach this issue.

(10th Cir. 2011); *see also* Fed. R. Civ. P. 56(a). A factual dispute is only "genuine" if the evidence and the inferences drawn from it, viewed in the light most favorable to the nonmoving party, are "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Kerber v. Qwest Group Life Ins. Plan*, 647 F.3d 950, 959 (10th Cir. 2011).

When a defendant raises a qualified immunity defense in a § 1983 case, we review summary judgment orders "differently." *Medina v. Cram,* 252 F.3d 1124, 1128 (10th Cir. 2001). The plaintiff must meet a "heavy two-part burden." *Id.* First, he must show that his constitutional rights were violated. *Hope v. Pelzer*, 536 U.S. 730, 736 (2002); *Cram,* 252 F.3d at 1128. Then, the plaintiff must show that those rights were "clearly established" so that "it would be clear to a reasonable officer that his conduct was unlawful in the situation." *Saucier v. Katz,* 533 U.S. 194, 201-02 (2001); *Medina,* 252 F.3d at 1128. Failure to show either would be fatal to his claim. Thus, Mr. Arencibia must show that the law clearly establishes that his detention was unreasonable.

A. ***Detention After a Traffic Stop***

After an initial traffic stop by an officer, "further detention [of the driver] for purposes of questioning unrelated to the initial traffic stop is impermissible *unless*: (1) the officer has an objectively reasonable and articulable suspicion that illegal activity has occurred or is occurring, *or* (2) the initial detention has become a consensual encounter." *United States v. Bradford*, 423 F.3d 1149, 1156-57 (10th Cir. 2005) (emphases added).

Thus, Deputy Trammel could constitutionally detain Mr. Arencibia beyond the initial traffic stop under either justification.  *Id.*

As we explain below, the law does not clearly establish that Deputy Trammel lacked reasonable suspicion in this context.  Therefore, qualified immunity applies, and we affirm the district court's grant of summary judgment.  Because we find that Deputy Trammel had reasonable suspicion of illegal activity, we need not address whether Mr. Arencibia's consent was voluntary.

B.  ***Reasonable Suspicion and Totality of the Circumstances***

Reasonable suspicion is based on the "totality of the circumstances."  *United States v. Arvizu*, 534 U.S. 266, 273 (2002).  We do not evaluate factors, such as the "red flags" identified by Deputy Trammel, in a vacuum.  Instead, we look at them as a whole, combined with the officer's experience and training, to determine if he had a "particularized and objective basis" for suspecting illegal activity.  *Id.* at 273.  For example, in *Bradford*, we held that an officer had reasonable suspicion to detain a driver based on a set of factors, any one of which could have had an innocuous connotation:  the presence of a cellular phone, luggage, and food wrappers; the driver's nervousness; inconsistencies and improbabilities in the driver's answers; and the driver's one-way car rental.  423 F.3d at 1157.

Deputy Trammel identified multiple bases for his suspicion, which he told to Sergeant Metz before continuing his detention of Mr. Arencibia.  These "red flags" included Mr. Arencibia's excessive nervousness, *see United States v. Contrera*s, 506 F.3d

1031, 1036 (10th Cir. 2007); *United States v. Williams*, 271 F.3d 1262, 1269 (10th Cir. 2001); the ghosting on the trailer; Mr. Arencibia's decisions to haul a locked, empty trailer attached to a truck with known mechanical problems across the country; unusual circumstances surrounding the purchase of the truck; the EPIC report on Mr. Arencibia's prior drug involvement, *see United States v. Sandoval*, 29 F.3d 537, 542 (10th Cir. 1994) (noting that prior criminal activity can give rise to reasonable suspicion *if* combined with other factors); and inconsistencies in the logbook, bill of lading, and weigh station tickets, *see, e.g.*, *United States v. Soto*, 988 F.2d 1548, 1555-56 (10th Cir. 1993); *United States v. Pena*, 920 F.2d 1509, 1514 (10th Cir. 1990)). While any one of these "red flags," if evaluated on its own, might not give rise to reasonable suspicion, the confluence of so many factors could give rise to suspicion that is "particularized and objective." *Arvizu*, 534 U.S. at 273 (explaining that the combination of multiple, seemingly harmless, factors could create reasonable suspicion).

Having identified multiple factors pointing to reasonable suspicion, Deputy Trammel could not have been on notice that he was violating a clearly established constitutional right. *See Anderson v. Creighton*, 483 U.S. 635, 640 (1987) ("The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."). We agree with the district court that Deputy Trammel did not violate a clearly established constitutional right and that summary judgment is appropriate. Qualified immunity shields the Defendants from § 1983 liability.

C. ***Mr. Arencibia's Argument About Reasonable Suspicion After the Initial Traffic Stop***

Mr. Arencibia concedes that Deputy Trammel identified several "red flags" demonstrating his "reasonable and articulable suspicion to question [Mr.] Arencibia on matters unrelated to the initial traffic stop." Aplt. Reply Br. at 2. Nonetheless, Mr. Arencibia argues those "red flags" became irrelevant once Deputy Trammel returned Mr. Arencibia's paperwork. In his view, Deputy Trammel based his further detention on the belief that the encounter had become consensual.

Mr. Arencibia supports this argument using a "bright line rule" that officers must return drivers' paperwork before an encounter can become consensual. *See United States v. Elliott*, 107 F.3d 810, 814 (10th Cir. 1997). As Mr. Arencibia is quick to note, simply returning paperwork is not sufficient to transform a detention into a consensual encounter when other factors would make a reasonable driver feel that he was not free to leave. Nonetheless, we are not aware of any authority establishing that an officer's return of a driver's documents extinguishes reasonable suspicion as an independent justification for further questioning.[7] Indeed, our decision in *Bradford* supports continued detention after the initial traffic stop based on the driver's consent *or* reasonable suspicion of criminal activity. *Bradford*, 423 F.3d at 1156-57 (10th Cir. 2005).

---

[7] In his brief, Mr. Arencibia cited no authority to support this assertion. At oral argument, his counsel cited *Bradford* and *Florida v. Royer*, 460 U.S. 491 (1983). Neither of those cases holds that an officer must rely only on consent, to the exclusion of reasonable suspicion, once a driver's paperwork has been returned.

-11-

Deputy Trammel's reasonable and articulable suspicion that Mr. Arencibia was involved in transporting illegal drugs or related materials warranted his continued detention of Mr. Arencibia after the initial traffic stop. The law does not clearly establish that officers with reasonable suspicion of criminal activity cannot continue questioning after the initial traffic stop. Thus, the Defendants are entitled to qualified immunity.[8]

## III.   **CONCLUSION**

Because the law does not clearly establish that Deputy Trammel lacked a "reasonable and articulable suspicion" based on the red flags he listed, we affirm the district court's grant of summary judgment based on qualified immunity.

ENTERED FOR THE COURT


Scott M. Matheson, Jr.
Circuit Judge

---

[8] We view Mr. Arencibia's Fourth Amendment claim as applying to Deputy Trammel and Sergeant Metz. However, to the extent that any of the other officers named as Defendants are implicated, qualified immunity applies to them for the reasons stated in this opinion. Therefore, summary judgment as to all Defendants is affirmed.