**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**September 22, 2015**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

JAMES MARTIN,

    Plaintiff - Appellant,

v.

THE COUNTY OF SANTA FE; OFFICER
II, ROBERT JAMES GARCIA; LT.
JOSEPH E. MCLAUGHLIN, JR.;
SERGEANT MIKE MARTINEZ;
DEPUTY GABE ORTIZ, in their
individual and offical capacities as
employees of the County of Santa Fe,

    Defendants - Appellees.

No. 14-2143
(D.C. No. 1:13-CV-00575-KBM-RHS)
(D. N.M.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **PHILLIPS**, **BALDOCK**, and **EBEL**, Circuit Judges.
_____

    Plaintiff-Appellant James Martin appeals from the district court's final

judgment dismissing, _inter alia_, his First Amendment and Fourth Amendment claims

against four County of Santa Fe law enforcement officers: Robert Garcia, Joseph

McLaughlin, Mike Martinez, and Gabe Ortiz (collectively, "Defendants"). Martin's

suit arises out of an incident wherein Defendants—who were dispatched to an

---

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel. It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

apartment complex at 9:15 p.m. in response to a 911 call indicating that a man had been shot in the leg and that the shooter was still present on scene—handcuffed and restrained Martin on the ground for nine minutes before facilitating his nonconsensual transport to the hospital. On appeal, Martin contends that reversal is warranted because the district court (1) abused its discretion by limiting discovery after Defendants asserted qualified immunity as a defense, and (2) erred by granting summary judgment in favor of Defendants. Exercising our jurisdiction under 28 U.S.C. § 1291, we AFFIRM the district court's order granting Defendants' motion to stay discovery, its order denying Martin's Fed. R. Civ. P. 56(d) request for additional discovery, and its order granting Defendants' motion for summary judgment.

## I. Facts

Viewing the evidence in the light most favorable to Martin, Estate of B.I.C. v. Gillen, 710 F.3d 1168, 1171 (10th Cir. 2013), the record established the following:

On June 13, 2012, at approximately 9:15 p.m., Joseph Montoya called 911. Montoya, a resident at the apartment complex where Martin was staying with his girlfriend, told dispatch that a man had been shot in the leg with a .44 magnum and was "bleeding like crazy" from a "big hole." Doc. 71 (Memorandum Opinion and Order granting summary judgment) at 5 (citing audio tape, Plaintiff's Ex. A). The injured man was later identified as Martin.

During the course of Montoya's conversation with dispatch, Montoya described Martin as "intoxicated big time" and "paranoid." Id. When the dispatcher asked Montoya where the *shooter* was, Montoya responded "he's right in front of my

2

house." Id. Although Montoya did not know it at the time of his call, Martin had actually been shot several hours earlier at a grocery store and had returned to his girlfriend's apartment because he did not want to go to the hospital.

As a result of Montoya's call, Defendants—who believed that the shooting had just occurred and that an unidentified shooter was on scene—were dispatched to the apartment complex. Defendant McLaughlin arrived on scene first, followed in quick succession by Defendants Martinez and Ortiz. Defendant Garcia arrived sometime shortly thereafter. It was dark outside and there were no street lights in the area; Defendants' vehicle headlights provided the only light.

Upon Defendants' arrival, Martin, the shooting victim, and Montoya, the 911 caller, approached Defendants. Defendant McLaughlin got out of his vehicle first with his gun drawn. Montoya was gesturing toward Martin, but McLaughlin did not understand the meaning of the gesture. As Martin got closer to McLaughlin, Martin—who was holding a can of beer—spread his arms wide open and stated something to the effect of "You going to shoot me again?" several times. Id. at 6. McLaughlin did not see any visible signs of injury on Martin, and Martin—who was acting belligerent and appeared intoxicated—did not tell Defendants that he had been shot in the leg earlier that day or that the shooting had occurred at a different location. By this time, Defendants Martinez and Ortiz also had their guns drawn.

McLaughlin ordered both Martin and Montoya to sit on the ground. Montoya complied. Although Martin also complied with this initial order, he did not comply with McLaughlin's subsequent order that he lay down on his belly. As a result,

3

Defendants McLaughlin, Martinez, and Ortiz together forced Martin—who was resisting Defendants—onto his belly and handcuffed him.

McLaughlin then put his knee on Martin's back and restrained Martin in this face-down position for nine minutes as Martinez and Ortiz, as well as other later-arriving officers, secured the area. During this nine-minute period, Martin continued to struggle and kick intermittently. As a result, Martin's right ankle was eventually restrained against the back of his right leg as McLaughlin attempted to prevent Martin from kicking.

As soon as the area was secure, Martin was moved to an ambulance. Martin stated that he did not want medical treatment for his gunshot wound and protested when the medics attempted to put him on the gurney. However, with McLaughlin's help, the medics were able to get Martin onto the gurney. Because Martin continued resisting medical care by spitting and kicking, his hands remained restrained behind his back until after medical treatment commenced. At some point, the handcuffs were removed and the medics placed soft restraints on Martin's ankles and wrists as McLaughlin held Martin's head down. McLaughlin exited the ambulance after the restraints were in place, and Martin was thereafter transported to the hospital.

After the ambulance left for the hospital, Martin's girlfriend arrived at the apartment complex. She informed the officers that Martin had been shot earlier in the evening outside of a grocery store. This was the first time that Defendants had any indication that the shooting had not occurred at the apartment complex.

4

## II. Procedure

As a result of this incident, Martin sued Defendants.[1]  Most important for purposes of this appeal, Martin alleged that Defendants: (1) violated his Fourth Amendment rights by failing to conduct an investigation when they first arrived on scene, restraining him without probable cause, falsely imprisoning him, and using excessive force against him; and (2) violated his First Amendment rights by retaliating against him for protesting his unlawful arrest.[2]  Defendants moved for summary judgment with respect to all of Martin's claims against them, asserting qualified immunity as a defense from individual liability.  Defendants also moved to stay discovery pending the district court's summary-judgment determination.  In response, Martin opposed Defendants' motion for summary judgment, filed a Fed. R. Civ. P. 56(d) affidavit seeking additional discovery, and opposed Defendants' motion to stay.

---

[1] Martin also sued the County of Santa Fe for failure to train and supervise Defendants and for negligent retention.  We need not consider whether the district court properly dismissed Martin's claim against the County because Martin did not challenge on appeal this aspect of the district court's order.  See Coleman v. B-G Maint. Mgmt. of Colo. Inc., 108 F.3d 1199, 1205 (10th Cir. 1997) ("Issues not raised in the opening brief are deemed abandoned or waived.").

[2] In addition to these federal-law claims, Martin also brought two state-law claims against Defendants.  Although the district court dismissed *all* of Martin's claims, we need not determine whether the district court properly dismissed Martin's state-law claims because Martin failed adequately to challenge the dismissal of these claims on appeal.  Specifically, on appeal Martin failed to make any argument for reversal with respect to one of his state-law claims.  And although Martin requested that we reverse the district court's dismissal of his other state-law claim in a single sentence near the end of his brief, this conclusory and unsupported argument is insufficient to avoid waiver.  See United States v. Martinez, 518 F.3d 763, 768 (10th Cir. 2008) (deeming an argument waived because it was "supported by no analysis or citation").

5

The district court granted Defendants' motion to stay, and in a subsequent order, denied Martin's Rule 56(d) request for additional discovery and granted Defendants' motion for summary judgment. The district court then filed a final judgment dismissing all of Martin's claims with prejudice. Martin filed a timely appeal.

## II. Discussion

Martin's arguments on appeal are disorganized and difficult to follow. But he essentially argues that we should reverse the district court's final judgment for two independent reasons. First, Martin contends that the district court abused its discretion by staying discovery and by declining to grant his Rule 56(d) request for additional discovery. Second, Martin contends that, even if the district court properly limited discovery, the court nonetheless erred by granting summary judgment in favor of Defendants. We address each asserted ground for reversal in turn.

### A. Discovery Rulings

Martin first argues that reversal is warranted because the district court erroneously restricted discovery prior to ruling on Defendants' motion for summary judgment. We review the district court's decision to grant Defendants' motion to stay discovery, as well as its decision to deny Martin's Rule 56(d) discovery request, for abuse of discretion. See Creative Consumer Concepts, Inc. v. Kreisler, 563 F.3d 1070, 1080 (10th Cir. 2009) (motion to stay); Ellis v. J.R.'s Country Stores, Inc., 779 F.3d 1184, 1192 (10th Cir. 2015) (Rule 56(d) discovery request). We will reverse the district court "only if the court exceeded the bounds of the rationally available

6

choices given the facts and the applicable law in the case at hand." Big Sky Network Canada, Ltd. v. Sichuan Provincial Gov't, 533 F.3d 1183, 1186 (10th Cir. 2008).

Importantly, in assessing the propriety of the district court's discovery determinations here, we must bear in mind that the district court made each determination *after* Defendants asserted qualified immunity as a defense. Because "the driving force behind creation of the qualified immunity doctrine was a desire to ensure that insubstantial claims against government officials will be resolved *prior to discovery*," Pearson v. Callahan, 555 U.S. 223, 231 (2009) (emphasis added) (alterations, internal quotation marks omitted), there is a strong policy justification for staying discovery and for refusing requests for additional discovery once a defendant invokes qualified immunity as a defense. As we have explained,

> Qualified immunity is an entitlement not to stand trial or face the other burdens of litigation. The privilege is an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial. Accordingly, qualified immunity questions should be resolved at the earliest possible stage in litigation. *Even such pretrial matters as discovery are to be avoided if possible, as inquiries of this kind can be peculiarly disruptive of effective government*.

Jiron v. City of Lakewood, 392 F.3d 410, 414 (10th Cir. 2004) (second emphasis added) (alterations, internal citations and quotation marks omitted).

Although discovery generally should be avoided once qualified immunity is raised, there are some circumstances when narrow discovery is permitted. See Cole v. Ruidoso Mun. Sch., 43 F.3d 1373, 1387 (10th Cir. 1994). However, the plaintiff

7

bears the burden of demonstrating "how [such] discovery will raise a genuine fact issue as to the defendants' qualified immunity claim." Id. (alterations and internal quotation marks omitted). Here, Martin contends that he successfully demonstrated that additional discovery was necessary to resolve several genuine fact issues regarding the reasonableness of Defendants' conduct, the cornerstone of their qualified-immunity defense, such as whether Defendants: (1) knew that the victim of the shooting would be on scene when they arrived; (2) understood that Martin was the victim or saw the bandage on Martin's leg; and (3) possessed probable cause to arrest Martin. These purported fact issues, however, are either not genuinely disputed or are not relevant to Defendants' qualified-immunity defense.

With respect to the first fact, there is no genuine factual issue that additional discovery could resolve because Defendants concede that they knew the shooting victim would be on scene. The second fact similarly does not warrant additional discovery because, even if McLaughlin knew Martin was the shooting victim, such knowledge would not undermine Defendants' qualified-immunity defense given McLaughlin's undisputed and reasonable belief that the shooting had occurred at the apartment complex and that the officers needed to secure the area to avoid further escalation while they searched for a shooter they believed to be present. Finally, the third "fact" does not even present a *factual* issue because the existence or absence of probable cause calls for a legal—not factual—determination. See United States v. Zamudio-Carrillo, 499 F.3d 1206, 1209 (10th Cir. 2007) (explaining that the ultimate determination of whether probable cause to arrest existed is a legal question).

8

Because Martin failed to demonstrate how additional discovery would have raised a genuine fact issue as to Defendants' qualified-immunity defense, the district court did not exceed the bounds of rationally available choices by staying discovery in light of the known facts and relevant law. See Big Sky, 533 F.3d at 1186. We therefore affirm the district court's order staying discovery and its order denying Martin's request for additional discovery.[3]

**B. Summary Judgment Ruling**

Even if the district court's discovery determinations were proper, Martin argues that reversal is nonetheless warranted because the district court erroneously granted Defendants' motion for summary judgment. According to Martin, summary judgment was inappropriate for two reasons. First, he contends that the district court failed to construe the facts in the light most favorable to him, the nonmoving party, as evidenced by the district court's alleged failure to acknowledge that there were numerous disputed issues of material fact. Second, he contends that the district court erroneously concluded that Martin failed to meet his burden of demonstrating that Defendants violated his clearly established Fourth Amendment and First Amendment rights. We review the district court's grant of summary judgment *de novo*, see Gillen, 710 F.3d at 1171, addressing each of Martin's arguments for reversal in turn.

---

[3] Martin also asserts, without analysis or any citations, that the district court violated his Due Process rights by denying his discovery requests. We do not separately consider this argument because it is waived. Williams v. W.D. Sports, N.M., Inc., 497 F.3d 1079, 1095 (10th Cir. 2007) ("[W]e have repeatedly warned that attempts to raise issues without sufficient briefing will result in their summary disposition.").

9

## 1. There are no genuine issues of material fact

According to Martin, summary judgment was improper here because, *inter alia*, the district court failed to accept his version of the facts as true, and as a result, improperly treated certain genuinely disputed material facts as undisputed. See Fed. R. Civ. P. 56(a) (explaining that summary judgment is only appropriate if the movant shows that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law). In the relevant portion of Martin's opening brief, he states that there are "disputed numerous areas of fact" in opposition to summary judgment below and then lists some of the "[m]ost salient" ones. Martin Br. at 14 (electronic version). Because Martin's mere reference to all of his arguments below is not sufficient to avoid summary disposition of those arguments on appeal, see Williams, 497 F.3d at 1095 (explaining that this Court has "repeatedly warned that attempts to raise issues without sufficient briefing will result in their summary disposition"), we limit our review here to those facts that Martin expressly identifies as being genuinely disputed and material:

(1) whether Montoya called 911 numerous times;
(2) whether Defendants knew that both the victim and the caller would be on scene prior to Defendants' arrival;
(3) whether the area was clearly lit by Defendants' vehicles;
(4) whether Defendants understood that Martin was the shooting victim upon their arrival;
(5) whether Martin could have escaped or tried to escape; and
(6) whether Defendants' use of force against Martin was unreasonable.

10

Having carefully reviewed the parties' arguments and the record, we conclude, like the district court, that none of these facts are both genuinely disputed and material. With respect to the first two facts, Defendants' response brief confirms that Defendants do not dispute Martin's contention that Montoya called 911 numerous times or that Defendants knew that the victim and the caller would be on scene. Although the parties' characterizations of the third fact diverge, such divergence does not present a *genuinely* disputed fact because Defendants' dash-cam video shows that the scene was dark and that the only light came from Defendants' vehicles; thus, Martin's mere characterization of the scene as "clearly lit" does not transform this verifiable fact into a disputed one.[4] See Scott v. Harris, 550 U.S. 372, 380 (2007) (explaining that there is no genuine issue of material fact "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record").

The fourth fact is not material. As we explain below, Martin failed to demonstrate that Defendants violated clearly established law by restraining a noncompliant and apparently intoxicated individual for nine minutes in order to clear a scene where they reasonably believed that a shooting had recently occurred. See infra pp. 14-16. Even if Defendants understood Martin to be the shooting victim and even if Martin was not trying to escape (Martin's fifth disputed fact), he still failed to meet his burden of establishing that, in light of the facts known to them, the officers acted contrary to clearly established law by securing the scene during an

---

[4] Martin does not argue that the dash-cam video is unreliable or inaccurate in any way.

investigation of what the officers reasonably believed was a crime scene that included an active shooter. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (explaining that a fact is only material if it "might affect the outcome of the suit under the governing law"). Finally, although the parties disagree about the sixth "fact," such disagreement does not present a *factual* dispute because the reasonableness of Defendants' use of force calls for a legal—not factual— determination. See Medina v. Cram, 252 F.3d 1124, 1127, 1131 (10th Cir. 2001) (explaining that where, as here, there are no disputed material facts, whether the officers asserting qualified immunity as a defense to an excessive force claim acted reasonably calls for a legal determination). Moreover, in our ruling, we accept as undisputed the facts as shown by the dash-cam video. See Scott, 550 U.S. at 380.

Although we must view the facts and draw reasonable inferences in the light most favorable to Martin, the nonmoving party, Martin "must still identify sufficient evidence requiring submission to the jury." See Turner v. Pub. Serv. Co. of Colo., 563 F.3d 1136, 1142 (10th Cir. 2009) (internal quotation marks omitted). Because we conclude that Martin fails to identify such evidence, the district court correctly determined that there are no genuine issues of material fact.

2. Martin cannot establish that Defendants violated his clearly established constitutional rights

Martin argues that summary judgment was unwarranted because, contrary to the district court's conclusion, Martin contends that he successfully demonstrated that Defendants violated his clearly established Fourth Amendment and First

12

Amendment rights.[5]  Where, as here, the defendant asserts qualified immunity as a

defense, the plaintiff bears a "heavy two-part burden."  Medina, 252 F.3d at 1128.

To satisfy this burden and survive summary judgment, the plaintiff must establish

that (1) the defendant's actions violated a constitutional or statutory right, and (2) the

right at issue was clearly established in light of the specific context of the case.  Id.

Thus, unless the record clearly demonstrates that Martin satisfied this burden with

respect to either his Fourth Amendment or First Amendment claims, Defendants are

entitled to qualified immunity.  See id.

*a. No clearly established Fourth Amendment right*

In granting Defendants' motion for summary judgment with respect to

Martin's Fourth Amendment claim, the district court concluded that Martin failed to

establish both prongs of the qualified-immunity analysis.  With respect to the first

prong, the district court concluded that "no reasonable juror could find that [Martin]

was arrested or that his detention at the scene or transport to the hospital for

---

[5] We refer generically to Defendants in reviewing the propriety of summary judgment with respect to Martin's constitutional claims.  Although individual liability under 42 U.S.C. § 1983 only arises if a particular defendant's "direct personal responsibility for the claimed deprivation of a constitutional right" is established, Trujillo v. Williams, 465 F.3d 1210, 1227 (10th Cir. 2006), we need not consider each Defendant's level of personal responsibility here because we conclude that all Defendants are entitled to qualified immunity.  We do note, however, that it is unclear what, if any, role Defendant Garcia personally played in Martin's restraint and subsequent transfer to the hospital.  It is also unclear what, if any, role Defendants Martinez and Ortiz played in Martin's transfer to the hospital.  Had this Court found that Martin met his burden of showing that his clearly established constitutional rights were violated, his failure to establish each of these Defendants' personal responsibility for the claimed deprivation of his constitutional rights would provide an alternative basis for affirming the district court as to them.

emergency medical care constituted an unreasonable search or seizure."[6] Doc. 71

at 14. With respect to the second prong, the district court concluded that, even if

Martin's Fourth Amendment rights were violated, the officers were entitled to

qualified immunity because "there was no case law at the time that would have

supported a contrary conclusion." Id. at 18. On appeal, Martin disputes both

conclusions.

Exercising our discretion to decide which prong of the qualified-immunity

analysis to address first, see Pearson, 555 U.S. at 236, we begin and end our analysis

of Martin's Fourth Amendment claim by considering whether Martin met his burden

of demonstrating that the Fourth Amendment rights he claims Defendants violated

were clearly established at the time of his encounter with Defendants. To meet this

burden of articulating clearly established law, Martin "may present precedent from

the Supreme Court, the Tenth Circuit, or other circuits" that, at the time of the

incident, "gave the defendants fair warning that their conduct was unconstitutional."

Novitsky v. City of Aurora, 491 F.3d 1244, 1255 (10th Cir. 2007) (internal quotation

marks omitted). Although we do not require a case that is directly on point, "existing

precedent must have placed the . . . constitutional question beyond debate." Ashcroft

---

[6] The district court analyzed Defendants' encounter with Martin in two stages: (1) the nine minutes Defendants restrained Martin on the ground, and (2) the time wherein Defendants facilitated Martin's transport to the hospital. See United States v. White, 584 F.3d 935, 945 (10th Cir. 2009) (explaining that courts analyze each stage of an encounter to determine whether a defendant's Fourth Amendment rights were violated because the character of a police/citizen encounter is "not static"). The district court determined that the first stage of the encounter was a reasonable investigative detention and that the second stage of the encounter was a reasonable exercise of Defendant's non-investigatory community-caretaking function.

14

v. al–Kidd, 131 S. Ct. 2074, 2083 (2011); id. at 2078 (explaining that a government official's conduct violates clearly established law when, "at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable officer would have understood that what he is doing violates that right" (internal quotation marks and alterations omitted)); see also Novitsky, 491 F.3d at 1255 (explaining that qualified immunity is warranted when officers of reasonable competence could disagree as to the lawfulness of the specific conduct at issue).

We conclude, like the district court, that Martin failed to satisfy his burden of articulating clearly established law. On appeal, Martin asserts, generically and without meaningful analysis, that his clearly established Fourth Amendment rights were violated when Defendants arrested him "without probable cause" and without confirming his identity as the shooting victim. Martin Br. at 11, 24 (electronic version). The general proposition that being arrested in the absence of probable cause violates the Fourth Amendment, however, does not establish that the particular conduct Defendants undertook in this case violated clearly established law. See al–Kidd, 131 S. Ct. at 2084 ("The general proposition, for example, that an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is clearly established.").

Reframing the inquiry to account for "the *specific* context of the case," Novitsky, 491 F.3d at 1255 (emphasis added) (internal quotation marks omitted), the relevant question here is whether Defendants had fair warning at the time of their encounter with Martin that it was unreasonable under the Fourth Amendment to force

15

a noncompliant and apparently intoxicated individual onto his belly, handcuff him, and restrain him on the ground for nine minutes in order to secure a dark and chaotic scene where they reasonably believed a shooting had just occurred and still contained the shooter and then to facilitate that individual's nonconsensual custodial transport to the hospital.  See Kerns v. Bader, 663 F.3d 1173, 1182-83 (10th Cir. 2011).  Because Martin cites to no cases, and we have found none, placing the constitutional implications of Defendants' conduct here "beyond debate," al–Kidd, 131 S. Ct. at 2083, we conclude that Martin failed to satisfy the second prong of the qualified-immunity inquiry.  Accordingly, we affirm the district court's decision to grant summary judgment in favor of Defendants on this claim.

### b. No First Amendment violation

Martin also argues that the district court erred by granting Defendants' motion for summary judgment because he demonstrated that Defendants violated his clearly established First Amendment rights by detaining him in retaliation for protesting his supposedly unlawful arrest.  In granting Defendants' motion for summary judgment with respect to Martin's First Amendment claim, the district court concluded that Martin failed to establish both prongs of the qualified-immunity inquiry.  In determining that Martin failed to establish that his constitutional rights were violated—the first prong of the inquiry—the district court considered whether Martin met his burden of demonstrating that (1) he was engaged in "constitutionally protected activity"; (2) Defendants' actions caused him "to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity";

16

and (3) Defendants' adverse actions were "substantially motivated as a response to [Martin's] exercise of constitutionally protected conduct." Worrell v. Henry, 219 F.3d 1197, 1212 (10th Cir. 2000) (outlining three elements a plaintiff must establish to demonstrate a First Amendment violation based on official retaliation, i.e., retaliation by someone other than the plaintiff's employer).

Focusing on the third element of Martin's First Amendment claim, the district court concluded that Defendants were entitled to summary judgment because, even if the first two elements of his claim were satisfied, Martin failed to offer evidence from which a reasonable juror could conclude that Defendants' actions were substantially motivated by a desire to retaliate against Martin for engaging in constitutionally protected conduct. We agree. There is simply no evidence in the record suggesting that Defendants possessed any retaliatory motive, let alone that such motive was a substantial reason for temporarily detaining Martin and facilitating his transport to the hospital. To the contrary, the record suggests that Defendants' actions were motivated first by a desire to secure the scene as quickly as possible and then by a desire to ensure that Martin received proper medical care for his gunshot wound.

Because no reasonable jury would conclude that Defendants' actions were substantially motivated as a response to Martin's exercise of constitutionally protected conduct, Martin cannot meet his burden of demonstrating that his First Amendment rights were violated. Accordingly, we affirm the district court's decision to grant summary judgment in favor of Defendants on this claim.

## III. Conclusion

For these reasons, we affirm the district court's order staying discovery, its order denying Martin's Rule 56(d) request for additional discovery, and its order granting Defendants' motion for summary judgment.[7]

Entered for the Court

David M. Ebel
Circuit Judge

---

[7] We note that Defendants requested attorney's fees and costs in a single, conclusory sentence at the end of their brief. We deny their request for attorney's fees without prejudice to renewal via a properly supported motion and note that costs are recoverable in accordance with Fed. R. App. P. 39.