**UNITED STATES COURT OF APPEALS**

**January 5, 2017**

**TENTH CIRCUIT**

CAROLYN CLARK, on behalf of the
Estate of Troy Burkinshaw and on
behalf of the heirs of Troy
Burkinshaw,

      Plaintiff - Appellee,

v.

AUSTIN BOWCUTT,

      Defendant - Appellant,

and

BOX ELDER COUNTY; BOX
ELDER COUNTY SHERIFF'S
DEPARTMENT; J. LYNN YEATES,

      Defendants.

No. 14-4163
(D.C. No. 1:13-CV-00079-CW-EJF)
(D. Utah)

**ORDER AND JUDGMENT**[1]

Before **BRISCOE**, **HOLMES**, and **MORITZ**, Circuit Judges.

Box Elder County Sheriff's Deputy Austin Bowcutt shot and killed Troy

---

[1]     This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Federal Rule of Appellate
Procedure 32.1 and Tenth Circuit Rule 32.1.

Clark Burkinshaw while retreating from the path of Mr. Burkinshaw's oncoming motor vehicle. Mr. Burkinshaw's mother, the Plaintiff-Appellee Carolyn Clark, commenced this action under 42 U.S.C. § 1983 and pendent state law against Deputy Bowcutt, Box Elder County, the Box Elder County Sheriff's Department, and the Department's then-acting sheriff, J. Lynn Yeates.[2] Ms. Clark alleged, *inter alia*, that Deputy Bowcutt had violated Mr. Burkinshaw's Fourth Amendment rights by using excessive force to stop Mr. Burkinshaw's fleeing vehicle. Deputy Bowcutt filed a motion for summary judgment, asserting the defense of qualified immunity.

The district court issued a ruling in which it denied Deputy Bowcutt's motion in all respects—including qualified immunity—based on the existence of genuinely disputed material facts. In this interlocutory appeal from the denial of qualified immunity, our jurisdiction is limited to considering only legal questions. Limited to that universe, our jurisdiction arises under 28 U.S.C. § 1291. We hold that a reasonable officer could have reacted in the manner Deputy Bowcutt did, and therefore he is entitled to qualified immunity. We therefore **reverse**.

**I**

On the evening of October 26, 2012, Deputy Bowcutt was on duty, driving

---

[2]     The claims brought against Box Elder County, the Box Elder County Sheriff's Department, and Sheriff J. Lynn Yeates were largely dismissed based on the district court's partial grant of the Defendants' motion for judgment on the pleadings. The district court's dismissal order regarding these claims is not before us in this interlocutory, qualified-immunity appeal.

eastbound on Utah State Route 13 in a marked patrol truck. Deputy Bowcutt observed what appeared to be Mr. Burkinshaw urinating on the shoulder of the westbound traffic lane. Mr. Burkinshaw returned to his vehicle, a Volkswagen Jetta, and began driving westbound. Deputy Bowcutt turned his patrol truck into the westbound traffic lane, activated the truck's overhead lights, pulled up behind Mr. Burkinshaw's Volkswagen, and initiated a traffic stop. After Mr. Burkinshaw pulled his Volkswagen to the side of the road, Deputy Bowcutt exited his truck and conversed with Mr. Burkinshaw, learning his name and date of birth. During their brief conversation, Deputy Bowcutt smelled alcohol and observed a brown paper bag in the backseat of the Volkswagen, but did not perform a breathalyzer to confirm his suspicion that Mr. Burkinshaw was intoxicated. Deputy Bowcutt then returned to his truck to check the status of Mr. Burkinshaw's driver's license. At that time, Mr. Burkinshaw drove away. As most relevant here, much of what transpired thereafter was captured on the dashboard camera, with audio capability, mounted in Deputy Boycott's vehicle.

Deputy Bowcutt initiated a pursuit, at one point reaching fifty miles per hour on the highway. Approximately one minute into the pursuit, Mr. Burkinshaw signaled before turning left into a residential area and reduced his speed to twenty-five or thirty miles per hour. As the pursuit advanced through the residential area, they encountered one other vehicle driving past in the opposite direction.

-3-

Approximately five minutes into the pursuit, Mr. Burkinshaw turned onto a dead-end road closed off by a cul-de-sac. As Deputy Bowcutt's patrol truck approached, Mr. Burkinshaw attempted to execute a three-point turn. In the meantime, Deputy Bowcutt turned his patrol truck horizontally to block Mr. Burkinshaw's Volkswagen from exiting the cul-de-sac. However, despite the blockage, Mr. Burkinshaw was able to drive his Volkswagen along the shoulder of the road between Deputy Bowcutt's patrol truck and the lawn of a residential property.

To prevent Mr. Burkinshaw from advancing, Deputy Bowcutt exited his patrol truck, drew his service weapon, and stepped in front of Mr. Burkinshaw's oncoming Volkswagen. The Volkswagen continued to move forward as Deputy Bowcutt stepped backwards; the Volkswagen's bumper was just inches away from Deputy Bowcutt, and Mr. Burkinshaw offered no indication that he intended to stop. During that time, Deputy Bowcutt shouted "Get out of the car!" twice and "Stop!" six times; he finally fired three rounds at Mr. Burkinshaw through the vehicle's windshield, striking him twice. Mr. Burkinshaw's Volkswagen then skidded onto the main road before crashing into a drainage ditch. Mr. Burkinshaw was pronounced dead at the scene.

Ms. Clark commenced the instant litigation in 2013. In her complaint, she asserted claims against Deputy Bowcutt, Box Elder County, the Box Elder County Sheriff's Department, and the Department's then-acting sheriff, J. Lynn Yeates.

Pursuant to 42 U.S.C. § 1983, Ms. Clark alleged that the Defendants' conduct violated Mr. Burkinshaw's Fourth Amendment right to be free from unlawful seizure, and his due process rights. Ms. Clark alleged that (1) Box Elder County, the Box Elder County Sheriff's Department, and Sheriff Yeates negligently "failed to implement adequate policies and procedures" and failed to "adequately train[ ]" Deputy Bowcutt, Aplt.'s App. at 21 (Compl., dated May 23, 2013); (2) Deputy Bowcutt was negligent and the County, Sheriff's Department, and Sheriff Yeates were vicariously liable for his negligence; (3) Deputy Bowcutt engaged in willful misconduct; (4) Deputy Bowcutt (as well as the other Defendants) wrongfully caused his death; and (5) violations of the Utah constitution.

The Defendants sought judgment on the pleadings, which the district court granted with respect to all of Ms. Clark's claims except for willful misconduct, wrongful death, and the Fourth Amendment violation. Deputy Bowcutt then sought summary judgment, arguing that he was entitled to qualified immunity on all claims brought against him.

On December 3, 2014, the district court issued an order denying Deputy Bowcutt's motion. The court expressly ruled that "[b]ecause resolution of the disputed issues of fact must be left to the jury, summary judgment is not appropriate in this situation." Aplt.'s App. at 235 (Mem. & Order, filed Dec. 3, 2014).

Deputy Bowcutt has timely appealed from the district court's ruling.

**II**

Before reaching the merits, we must address whether we have jurisdiction to entertain Deputy Bowcutt's interlocutory appeal of the district court's denial of qualified immunity. After Deputy Bowcutt filed his docketing statement in this appeal, our clerk's office flagged a possible jurisdictional issue and directed the parties to file memorandum briefs addressing this court's appellate jurisdiction; they did so, taking (not surprisingly) opposing views on the matter.

Pertinent to the request for jurisdictional briefing, the district court based its denial of summary judgment on the existence of "disputed issues of fact [that] must be left to the jury." Aplt.'s App. at 235. However, because this interlocutory appeal arises from the district court's denial of Deputy Bowcutt's motion for summary judgment on the basis of qualified immunity, our jurisdiction is limited under the collateral order doctrine to the review of only issues of law. *See Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985) ("[A] district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable 'final decision' within the meaning of 28 U.S.C. § 1291 notwithstanding the absence of a final judgment.").

In particular, in this interlocutory context, we lack jurisdiction "to review a district court's factual conclusions, such as the existence of a genuine issue of material fact for a jury to decide, or that a plaintiff's evidence is sufficient to support a particular factual inference." *Fancher v. Barrientos*, 723 F.3d 1191,

1199 (10th Cir. 2013) (quoting *Fogarty v. Gallegos*, 523 F.3d 1147, 1154 (10th Cir. 2008)); *accord Johnson v. Jones*, 515 U.S. 304, 319–20 (1995).  More specifically, our jurisdiction is limited to a review of two legal questions: that is, "(1) [whether] the defendant violated [the plaintiff's] constitutional or statutory rights, and (2) [whether] the right was clearly established at the time of the alleged unlawful activity."  *Castillo v. Day*, 790 F.3d 1013, 1019 (10th Cir. 2015); *accord Roosevelt-Hennix v. Prickett*, 717 F.3d 751, 753 (10th Cir. 2013).

However, even where the district court has purported to rest its denial of summary judgment in the qualified-immunity context on the existence of genuine issues of material fact, we may still exercise jurisdiction over a defendant's interlocutory appeal where the defendant "is willing to concede the most favorable view of the facts to the plaintiff for purposes of the appeal," *Farmer v. Perrill*, 288 F.3d 1254, 1258 n.4 (10th Cir. 2002) (quoting *Berryman v. Rieger*, 150 F.3d 561, 563 (6th Cir. 1998)),[3] and to respond to the plaintiff's claims "based on the facts they have alleged," *Castillo*, 790 F.3d at 1018.  "In this

---

[3]     The Sixth Circuit in *Berryman* stated the point well:

> [A] defendant who wishes to file such an [interlocutory] appeal after being denied qualified immunity should be prepared to concede the best view of the facts to the plaintiff and discuss only the legal issues raised by the case. Such a defendant will have a solid jurisdictional position if the defendant claims the plaintiff cannot show a violation of clearly established law even assuming everything alleged is true.

150 F.3d at 564.

regard, we have said that '[e]ven when the district court concludes issues of material fact exist, we have reviewed the legal question of whether a defendant's conduct, as alleged by the plaintiff, violates clearly established law.'" *Cox v. Glanz*, 800 F.3d 1231, 1242 (10th Cir. 2015) (quoting *Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179, 1186 (10th Cir. 2001)); *accord Medina v. Cram*, 252 F.3d 1124, 1130 (10th Cir. 2001); *see also Behrens v. Pelletier*, 516 U.S. 299, 313 (1996) ("[S]ummary judgment determinations *are* appealable when they resolve a dispute concerning an 'abstract issu[e] of law' relating to qualified immunity . . . ." (quoting *Johnson*, 515 U.S. at 317)). Accordingly, "[w]e need not . . . decline [interlocutory] review of a pretrial order denying summary judgment [in the qualified-immunity context] solely because the district court says genuine issues of material fact remain; instead, we lack jurisdiction only if our review would require second-guessing the district court's determinations of evidence sufficiency." *Medina*, 252 F.3d at 1130.

In light of these principles, we conclude that we can properly exercise jurisdiction over the district court's denial of Deputy Bowcutt's qualified-immunity defense. We readily acknowledge, however, that Deputy Bowcutt does only the bare minimum amount necessary to make this result possible; he does himself no favors. Specifically, on more than one occasion in his opening brief, Deputy Bowcutt attempts to advance his own version of the facts, including references to his subjective state of mind. *See, e.g.*, Aplt.'s Opening Br. at 13 &

n.12 (noting that he "became increasingly fearful for his life," and that "Plaintiffs did not adequately refute Deputy Bowcutt's beliefs").  However, in his reply brief, in a section titled "Clarification of Issues Presented," Deputy Bowcutt *unequivocally* acknowledges that the facts must be "taken in the light most favorable to Clark," and his "challenge[]" is to "the legal analysis the district court employed to determine that Deputy Bowcutt is not entitled to qualified immunity."  Aplt.'s Reply Br. at 5 (emphasis and capitalization omitted); *id.* (arguing "that even *accepting Clark's version of the facts*, Clark cannot show, under the correct legal standard, that Troy Burkinshaw . . . was subject to excessive deadly force in violation of the Fourth Amendment or that Deputy Bowcutt's actions were objectively unreasonable in light of clearly established law" (emphasis added)).

Though the timing of Deputy Bowcutt's acceptance of Ms. Clark's version of the facts is far from optimal, in our discretion, we take his acceptance into account and deem it sufficient to establish our jurisdiction over his interlocutory appeal.[4]  *See Bishop v. Hackel*, 636 F.3d 757, 764–65 (6th Cir. 2011) (citing to

_____

[4]     We caution, however, that, in our discretion, we also very likely could have alternatively treated Deputy Bowcutt's late-blooming, jurisdiction-saving acceptance as waived.  *Compare Raley v. Hyundai Motor Co.*, 642 F.3d 1271, 1275 (10th Cir. 2011) ("Where an appellant fails to lead, we have no duty to follow. It is the appellant's burden, not ours, to conjure up possible theories to invoke our legal authority to hear her appeal."), *and U.S. ex rel. Ramseyer v. Century Healthcare Corp.*, 90 F.3d 1514, 1518 n.2 (10th Cir. 1996) ("Our duty to consider unargued *obstacles* to subject matter jurisdiction does not affect our discretion to decline to consider waived arguments that might have *supported*

defendants' reply briefs, in holding that there was jurisdiction over the interlocutory appeal because "[i]n their briefs, the [defendants] state that they concede [plaintiff's] version of the facts for purposes of this appeal."); *Kinney v. Weaver*, 367 F.3d 337, 348 n.11 (5th Cir. 2004) ("The defendants recognize this point [i.e., that the court will accept plaintiff's version of the facts as true on an interlocutory appeal as the basis for jurisdiction] and conceded in their reply brief before the panel that they must 'accept the material facts reasonably suggested by Kinney's and Hall's summary-judgment proof.'"); *see also Baker v. Union Twp.*, 587 F. App'x 229, 232 (6th Cir. 2014) ("[T]hough the appellant defendants refer to the disputed facts in their brief on appeal, they concede the plaintiffs' version of the facts for the purposes of the appeal in their reply brief. This court can, therefore, exercise jurisdiction over the defendants' interlocutory appeal.").

## III

Deputy Bowcutt contends that the district court committed reversible error when it failed to grant him qualified immunity. We conclude that the district court erred in denying qualified immunity to Deputy Bowcutt. Specifically, we hold that Deputy Bowcutt's use of force was objectively reasonable and that the facts Ms. Clark has shown do not make out a violation of a constitutional right.

---

such jurisdiction.), *with Huffman v. Saul Holdings Ltd. P'ship*, 194 F.3d 1072, 1076–77 (10th Cir. 1999) ("A *defect* in subject matter jurisdiction can never be waived and may be raised at any time." (emphasis added)). Accordingly, litigants would be well-advised not to follow Deputy Bowcutt's practice.

Accordingly, we reverse and remand for entry of summary judgment in Deputy Bowcutt's favor.

**A**

Ms. Clark brought this action under 42 U.S.C. § 1983, which "allows an injured person to seek damages against an individual who has violated his or her federal rights while acting under color of state law." *Cillo v. City of Greenwood Vill.*, 739 F.3d 451, 459 (10th Cir. 2013); *accord Rock v. Levinski*, 791 F.3d 1215, 1219 (10th Cir. 2015). "Section 1983 creates no substantive civil rights, only a procedural mechanism for enforcing them." *Wilson v. Meeks*, 52 F.3d 1547, 1552 (10th Cir. 1995), *abrogated on other grounds by Saucier v. Katz*, 533 U.S. 194, 205 (2001); *accord Gonzaga Univ. v. Doe*, 536 U.S. 273 (2002) (noting that "§ 1983 merely provides a mechanism for enforcing individual rights 'secured' elsewhere, i.e., rights independently secured by the Constitution and laws of the United States."). "In defending against § 1983 claims like the ones at issue here, an official may plead an affirmative defense of qualified immunity." *Maresca v. Bernalillo Cty.*, 804 F.3d 1301, 1307 (10th Cir. 2015). The defense of qualified immunity is intended "to shield [public servants] from undue interference with their duties and from potentially disabling threats of liability." *Harlow v. Fitzgerald*, 457 U.S. 800, 806 (1982).

"We review *de novo* the district court's denial of a summary judgment motion asserting qualified immunity, and we apply the same legal standard that

the district court applied." *Bowling v. Rector*, 584 F.3d 956, 963 (10th Cir. 2009); *accord McBeth v. Hines*, 598 F.3d 708, 715 (10th Cir. 2010). A court reviewing the denial of a summary judgment motion based on qualified immunity must view the facts and adopt reasonable inferences "in the light most favorable to the party opposing the motion," *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam); *accord Saucier*, 533 U.S. at 201. "In qualified immunity cases, this usually means adopting . . . the plaintiff's version of the facts." *Scott v. Harris*, 550 U.S. 372, 378 (2007).

"[B]ecause at summary judgment we are beyond the pleading phase of the litigation, a plaintiff's version of the facts must find support in the record: more specifically, '[a]s with any motion for summary judgment, when opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts.'" *Thomson v. Salt Lake Cty.*, 584 F.3d 1304, 1312 (10th Cir. 2009) (quoting *York v. City of Las Cruces*, 523 F.3d 1205, 1210 (10th Cir. 2008)); *see also Estate of Larsen ex rel. Sturdivan v. Murr*, 511 F.3d 1255, 1259 (10th Cir. 2008) ("[T]he nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts. . . .'" (quoting *Scott*, 550 U.S. at 380)). Importantly, we may rely on "video evidence here, while acknowledging that it did not capture everything. Therefore, in addition to relying on the video we also continue to view the evidence in the light most

favorable to" Ms. Clark, the plaintiff. *Thomas v. Durastanti*, 607 F.3d 655, 659 (10th Cir. 2010); *accord Scott*, 550 U.S. at 378.

"Because of the underlying purposes of qualified immunity, we review summary judgment orders deciding qualified immunity questions differently from other summary judgment decisions." *Medina*, 252 F.3d at 1128; *accord Cortez v. McCauley*, 478 F.3d 1108, 1114 (10th Cir. 2007) (en banc). Specifically, when a defendant advances a qualified-immunity defense, this "trigger[s] a well-settled twofold burden" that the plaintiff must bear. *Cox*, 800 F.3d at 1246; *accord Cortez*, 478 F.3d at 1114; *see also Riggins v. Goodman*, 572 F.3d 1107 (10th Cir. 2009) ("When a defendant asserts qualified immunity at summary judgment, the burden shifts to the *plaintiff*, who must clear *two hurdles* in order to defeat the defendant's motion." (emphases added)). That burden requires "the plaintiff to show that: (1) the defendant violated a constitutional right and (2) the constitutional right was clearly established." *Pauly v. White*, 814 F.3d 1060, 1069 (10th Cir. 2016) (quoting *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009)); *accord Courtney v. Oklahoma ex rel. Dep't of Pub. Safety*, 722 F.3d 1216, 1222 (10th Cir. 2013).

"We have discretion to address either prong [of the qualified-immunity standard] first." *Panagoulakos v. Yazzie*, 741 F.3d 1126, 1129 (10th Cir. 2013); *accord Cox*, 800 F.3d at 1246–47; *see also Pearson v. Callahan*, 555 U.S. 223, 236 (2009) ("The judges of the district courts and the courts of appeals should be

permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."). "[I]f the plaintiff fails to establish either prong of the two-pronged qualified-immunity standard, the defendant prevails on the defense." *A.M. v. Holmes*, 830 F.3d 1123, 1134–35 (10th Cir. 2016). We elect to focus on the first prong—*viz.*, whether the defendant committed a constitutional violation—and it proves dispositive.

**B**

"To state an excessive force claim 'under the Fourth Amendment, plaintiffs must show *both* that a seizure occurred and that the seizure was unreasonable.'" *Durastanti*, 607 F.3d at 663 (quoting *Childress v. City of Arapaho*, 210 F.3d 1154, 1156 (10th Cir. 2000)); *see Brower v. Cty. of Inyo*, 489 U.S. 593, 598–99 (1989). It was never disputed that Mr. Burkinshaw was seized when Deputy Bowcutt shot him as the Volkswagen drove toward Deputy Bowcutt. Therefore, we are not called on to decide that question; instead, we focus on whether the uncontested seizure was reasonable.

**1**

"We review Fourth Amendment claims of excessive force under a standard of objective reasonableness, judged from the perspective of a reasonable officer on the scene." *Tenorio v. Pitzer*, 802 F.3d 1160, 1164 (10th Cir. 2015); *see Graham v. Connor*, 490 U.S. 386, 396–97 (1989). "We assess objective

reasonableness based on 'whether the totality of the circumstances justified the use of force,' and 'pay careful attention to the facts and circumstances of the particular case.'" *Estate of Larsen*, 511 F.3d at 1260 (quoting *Sevier v. City of Lawrence*, 60 F.3d 695, 699 (10th Cir. 1995)).  More specifically, the Court has articulated that

> [the Fourth Amendment reasonableness test's] proper application requires careful attention to the facts and circumstances of each particular case, including [1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight.

*Graham*, 490 U.S. at 396; *accord Thomson*, 584 F.3d at 1313.

"The reasonableness of [an officer's] actions depends both on whether the officers were in danger *at the precise moment* that they used force and on whether [the officers'] own *reckless* or *deliberate* conduct during the seizure unreasonably created the need to use such force." *Sevier*, 60 F.3d at 699 (emphases added) (footnote omitted).  Moreover, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396–97; *see also Cordova v. Aragon*, 569 F.3d 1183, 1188 (10th Cir. 2009) ("There is no easy-to-apply legal test for whether an officer's use of deadly force is excessive; instead, we must 'slosh our way through the

-15-

fact-bound morass of "reasonableness."'" (quoting *Scott*, 550 U.S. at 383)).

"*Deadly force* is such force that 'create[s] a substantial risk of causing death or serious bodily harm.'" *Thomson*, 584 F.3d at 1313 (emphasis added) (quoting *Jiron v. City of Lakewood*, 392 F.3d 410, 415 n.2 (10th Cir. 2004)). The use of deadly force is considered reasonable "only if a reasonable officer in Defendants' position would have had probable cause to believe that there was a *threat of serious physical harm to themselves* or to others." *Estate of Larsen*, 511 F.3d at 1260 (quoting *Jiron*, 392 F.3d at 415); *see Tennessee v. Garner*, 471 U.S. 1, 11 (1985) ("Where the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force."). In assessing the degree of threat the suspect poses to the officer, we consider factors that include, but are not limited to: "(1) whether the officers ordered the suspect to drop his weapon, and the suspect's compliance with police commands; (2) whether any hostile motions were made with the weapon towards the officers; (3) the distance separating the officers and the suspect; and (4) the manifest intentions of the suspect." *Estate of Larsen*, 511 F.3d at 1260. Notably, "if threatened by weapon (which may include a vehicle attempting to run over an officer), an officer may use deadly force." *Durastanti*, 607 F.3d at 664; *accord Scott v. Edinburg*, 346 F.3d 752, 757 (7th Cir. 2003).

**2**

Ms. Clark limits her claim to the argument that deadly force was unconstitutionally used when Deputy Bowcutt "deliberately stepped in front of Burkinshaw's vehicle as it was moving forward and remained in front of the vehicle despite opportunities to move aside" before shooting Mr. Burkinshaw. Aplee.'s Br. at 6. Ms. Clark also argues that the pursuit leading up to the shooting did not create an imminent threat of harm and therefore did not justify the use of deadly force. Deputy Bowcutt, on the other hand, contends that his use of deadly force was justified because he reasonably perceived that Mr. Burkinshaw's operation of the Volkswagen posed an immediate threat of death.

We recognize that this case presents a unique set of facts and circumstances. In accordance with Supreme Court precedent instructing us to review the reasonableness of Deputy Bowcutt's actions by "balanc[ing] the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion," *Scott*, 550 U.S. at 383 (quoting *United States v. Place*, 462 U.S. 696, 703 (1983)), we will consider the three non-exclusive factors set forth in *Graham*, 490 U.S. at 396, and the four factors articulated in *Estate of Larsen*, 511 F.3d at 1260, to shed light on whether a constitutional violation occurred.

Ms. Clark does not dispute that the third *Graham* factor, "whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight," 490

U.S. at 396, favors Deputy Bowcutt. Specifically, Ms. Clark concedes that Mr.
Burkinshaw "was attempting to evade arrest by flight." Aplee.'s Br. at 9 n.2.
Therefore, we need only consider whether the first and second *Graham* factors
support her claim.

The first *Graham* factor, "the severity of the crime at issue," 490 U.S. at
396, weighs in favor of Deputy Bowcutt, although without the same force as the
other factors. As the district court noted, the initial stop in this case was based on
the offense of public urination, which was then classified as a class C
misdemeanor under Utah law. *See* Utah Code Ann. § 76-9-702.3(2) (2014).
Generally, when officers suspect that a misdemeanor has been committed, "we
cannot say the officers were faced with a severe crime under the laws of the
[jurisdiction] they were charged with enforcing." *Fisher v. City of Las Cruces*,
584 F.3d 888, 895 (10th Cir. 2009); *accord Casey v. City of Fed. Heights*, 509
F.3d 1278, 1285 (10th Cir. 2007) ("*Graham* establishes that force is least justified
against nonviolent misdemeanants who do not flee or actively resist arrest.").
*Compare Koch v. City of Del City*, 660 F.3d 1228, 1246–47 (10th Cir. 2011)
(noting that the first *Graham* factor weighed in favor of the plaintiff when "[t]he
crime for which she was arrested, obstruction, is only a misdemeanor"), *with*
*Henry v. Storey*, 658 F.3d 1235, 1239 (10th Cir. 2011) (noting that the first
*Graham* factor weighed in favor of the defendant when he "had probable cause to
believe [the suspect] had stolen a vehicle, a felony").

However, the act of fleeing from a lawful traffic stop—the very reason Deputy Bowcutt initiated the pursuit—is a felony under Utah law. *See* Utah Code Ann. § 41-6a-210(1)(b)(i) (2014). Felonies are deemed more severe, and this particular felony dovetails with the third *Graham* factor, "whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." 490 U.S. at 396; *cf. Storey*, 658 F.3d at 1239–40 (noting that "[a] person who steals a vehicle non-violently still has the incentive and capability to evade arrest by fleeing in the vehicle" and for that reason rejecting the position that "officers may aim weapons at the occupants of a reportedly stolen vehicle only when they have reason to believe the vehicle was stolen by force or violence").

The second *Graham* factor, "whether the suspect poses an immediate threat to the safety of the officers or others," 490 U.S. at 396, more clearly favors Deputy Bowcutt and proves crucial to the outcome here. We reach this conclusion after first considering whether Deputy Bowcutt "could have reasonably perceived he was in danger at the precise moment that he used force and whether his own reckless or deliberate conduct (as opposed to mere negligence) unreasonably created a need to use force." *Durastanti*, 607 F.3d at 664; *accord Sevier*, 60 F.3d at 699 & n.7. Deputy Bowcutt argues that his use of deadly force was justified because he reasonably perceived that Mr. Burkinshaw's operation of the Volkswagen posed an immediate threat of death. Acknowledging that the dashboard camera video does not capture the entire episode in this case, it

-19-

is nevertheless readily apparent to us from examining the video that Mr. Burkinshaw posed an immediate threat to Deputy Bowcutt's safety.

Mr. Burkinshaw continued to drive his Volkswagen forward as Deputy Bowcutt stepped backwards; his vehicle's bumper was just inches away from Deputy Bowcutt. Despite Deputy Bowcutt's orders to stop, Mr. Burkinshaw did not. Deputy Bowcutt had mere seconds to react. We conclude that a reasonable officer in Deputy Bowcutt's position "would have feared for his life," *Cordova*, 569 F.3d at 1190, and his actions in firing at Mr. Burkinshaw were reasonable. Even if he was mistaken as to the imminence of the threat to his safety, it is axiomatic that "[a]n officer may be found to have acted reasonably even if he has a mistaken belief." *Durastanti,* 607 F.3d at 666; *see Pearson*, 555 U.S. at 231; *Saucier*, 533 U.S. at 205–06. If a reasonable officer in Deputy Bowcutt's position "would have feared for his life," then the "urgency of terminating the chase would increase and the balance would tip in the officer['s] favor." *Cordova*, 569 F.3d at 1190.

To be sure, the district court deemed reliance on the video "unavailing because the camera did not capture the whole incident, and does not include the moment when Bowcutt stepped in front of the [Volkswagen] or the actual shooting . . . . Moreover, whether Bowcutt could have moved out of the [Volkswagen's] way prior to shooting is not resolved by the video." Aplt.'s App. at 231. Furthermore, Ms. Clark argues that, even as a matter of law, Deputy

-20-

Bowcutt "was required to use alternative less intrusive means" and his "ability to move out of the way is also relevant to the question of whether Bowcutt was in imminent danger." Aplee.'s Br. at 28. But these objections are unavailing; put another way, they are immaterial.

In *Durastanti*, we considered similar arguments and concluded that they were immaterial to the question of whether a police officer could have reasonably perceived he was in danger at the precise moment that he used deadly force. 607 F.3d at 665. Specifically, we determined it was of no consequence that a video did not capture the police officer stepping into the vehicle's path, firing his first shots, or whether the officer could have stepped out of the way. *Id.* As in this case, the police officer in *Durastanti* "was in the [vehicle's] path in a very confined area." *Id.* Also, the sounds of the shots could "be heard and less than a second expire[d] between the moment the shots were fired and the moment [the officer] appeared in the video." *Id.* Most importantly, we noted, based on our precedent, that "officers do not always have to use the least restrictive means as long as their conduct is reasonable." *Id.*; *accord Cortez*, 478 F.3d at 1146; *Jiron*, 392 F.3d at 414. Guided by *Durastanti*, we reject the foregoing concerns of the district court and Ms. Clark.

Ms. Clark asserts that Mr. Burkinshaw "would not have been a threat if he had been allowed to escape," and the subsequent use of deadly force was therefore "objectively unreasonable." Aplee.'s Br. at 16. Ms. Clark cites no

authority for this proposition, and it is without merit.  *See Durastanti*, 607 F.3d at 665 (noting that "officers do not always have to use the least restrictive means as long as their conduct is reasonable").  Furthermore, Ms. Clark's argument that Mr. Burkinshaw "pos[ed] no actual risk of harm to others," because he had been stopped for a "relatively minor offense," Aplee.'s Br. at 13, ignores the fact that Mr. Burkinshaw evaded arrest and drove toward Deputy Bowcutt without stopping.  *See Durastanti*, 607 F.3d at 671 ("The fact that flight from a traffic stop may have precipitated these events does not make the vehicle any less dangerous."); *accord Cordova*, 569 F.3d at 1190 ("The threat to the officers themselves—if actual and imminent—could of course shift the calculus in the direction of reasonableness."); *cf. Garner*, 471 U.S. at 11 ("Where the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so.").

Ms. Clark also makes much of the purported recklessness of Deputy Bowcutt's conduct in stepping in front of Mr. Burkinshaw's Volkswagen. Similarly, the district court concluded that "[i]f Bowcutt could have reasonably moved out of the way, his decision to step in front of the car and remain there when it became apparent Burkinshaw was not going to stop may be found by a jury to have been reckless and to have unnecessarily created the need to use deadly force."  Aplt.'s App. at 232.  However, "[t]his is tantamount to the proposition that a citizen has a Fourth Amendment right to be free of police

-22-

actions contributing to the use of deadly force *by the citizen*." *Wilson*, 52 F.3d at 1554 (emphasis added). That proposition is unsupported by our precedent. *See id.* ("The 'failure to take cover' was presumably at issue [in our prior decision] only insofar as it bore upon whether the officer's life was truly in danger. The court never stated that it bore upon whether the officer contributed to the subject's use of deadly force." (discussing *Quezada v. City of Bernalillo*, 944 F.2d 710, 717 (10th Cir. 1991), *abrogated on other grounds by Saucier*, 533 U.S. 194)); *see also Romero v. Bd. of Cty. Comm'rs*, 60 F.3d 702, 704 (10th Cir. 1995) (noting that in *Wilson* "we refused to consider whether an officer who used deadly force in self-defense had caused the suspect to behave in a threatening manner").

Moreover, our inquiry on excessive force must focus on whether "the officer was in danger in the moment of the threat." *Wilson*, 52 F.3d at 1554. And "[m]ere negligent actions precipitating a confrontation would not . . . be actionable under § 1983," *Sevier*, 60 F.3d at 699 n.7; "officers' conduct is only actionable if it rises to the level of *recklessness*" for purposes of a § 1983 claim, *Thomson*, 584 F.3d at 1320 (emphasis added); *accord Mason v. Lafayette City-Parish Consol. Gov't*, 806 F.3d 268, 288 (5th Cir. 2015).

We would be hard-pressed to label Deputy Bowcutt's conduct negligent, much less reckless. Deputy Bowcutt's act of stepping in front of the Volkswagen did not unreasonably create the need to use force; the totality of the circumstances shows that his actions were reasonable. *See Thomson*, 584 F.3d at 1320 (holding

-23-

that "[i]t was objectively reasonable for the officers to take the steps that they did to locate an armed man who was agitated and running through a neighborhood"); *Jiron*, 392 F.3d at 418 (holding that an officer's decision to "coax Plaintiff out of the bedroom instead of awaiting the arrival of backup" when the plaintiff was armed constituted a reasonable attempt "to prevent an armed and agitated suspect from escaping"); *Medina*, 252 F.3d at 1132 (holding that officers' "failure to take cover" after releasing a police dog was reasonable under the circumstances when the suspect "communicated that he had a gun").

The video reveals that Mr. Burkinshaw had time to stop the vehicle; indeed, Deputy Bowcutt was backing up as the vehicle was moving forward. Deputy Bowcutt was under no obligation to take cover in order to discourage Mr. Burkinshaw from using his vehicle as a weapon to inflict potentially deadly force. *See Jiron*, 392 F.3d at 418 (noting that while waiting for backup rather than engaging an armed suspect might have lead to a "more peaceful resol[ution]," such a "retrospective inquiry" is irrelevant and the officer "adequately performed her duties as a reasonable law enforcement officer by taking steps to prevent an armed and agitated suspect from escaping").

Ms. Clark relies largely on *Cordova* to advance her theory that Deputy Bowcutt's conduct cannot be characterized as self-defense. 569 F.3d at 1187. In *Cordova*, the district court found that the officer's conduct in drawing his gun upon a fleeing motorist was reckless, and the only question on appeal was

"whether the potential risk to third parties created by Mr. Cordova's driving was alone sufficient to justify Officer Aragon's shooting him." *Id.* As evident from this description, *Cordova* is inapposite; there, the parties did not dispute that the officer was in no immediate danger. In contrast, that very issue—*viz.*, whether Deputy Bowcutt was in immediate danger as the Volkswagen drove toward him—is at the very heart of this appeal. Therefore, Ms. Clark's reliance on *Cordova* is misplaced.

Finally, because Deputy Bowcutt used deadly force, we turn to the four factors that we articulated in *Estate of Larsen* to assess the "degree of threat" Deputy Bowcutt faced: "(1) whether the officers ordered the suspect to drop his weapon, and the suspect's compliance with police commands; (2) whether any hostile motions were made with the weapon towards the officers; (3) the distance separating the officers and the suspect; and (4) the manifest intentions of the suspect." 511 F.3d at 1260. Applying those factors, we conclude that the degree of threat, viewed alongside the *Graham* factors, favors granting qualified immunity to Deputy Bowcutt.

These factors indicate that "from the perspective of a reasonable officer on the scene, the totality of circumstances justified the use of force." *Thomson*, 584 F.3d at 1319 (quoting *Estate of Larsen*, 511 F.3d at 1260). Deputy Bowcutt repeatedly ordered Mr. Burkinshaw to "Get out of the car!"—and yet Mr. Burkinshaw did not. Further, we have held that "an officer's reasonable

perception that a vehicle may be used as a weapon may allow for the use of deadly force," and it is beyond peradventure that Mr. Burkinshaw was making hostile motions with his weapon—i.e., his car—toward Deputy Bowcutt. *Durastanti*, 607 F.3d at 671; *see also McCullough v. Antolini*, 559 F.3d 1201, 1207 (11th Cir. 2009) ("We have . . . consistently upheld an officer's use of force and granted qualified immunity in cases where the decedent used or threatened to use his car as a weapon to endanger officers or civilians immediately preceding the officer's use of deadly force."). The video reveals that the distance between Deputy Bowcutt and the front bumper of Mr. Burkinshaw's Volkswagen was mere inches, and Mr. Burkinshaw gave no indication that he would stop, which, taken together, an officer could reasonably perceive as a manifestation of lethal intent. Accordingly, with the totality of the factual circumstances in mind, the *Estate of Larsen* factors—viewed alongside the variables that *Graham* specifically identifies—powerfully support Deputy Bowcutt's position that his use of deadly force was reasonable.

## C

In sum, we hold that Deputy Bowcutt was entitled to qualified immunity and the district court erred in denying him summary judgment. Ms. Clark failed to establish a constitutional violation under the Fourth Amendment because she did not demonstrate that the shooting of Mr. Burkinshaw—as he drove his Volkswagen toward Deputy Bowcutt—was objectively unreasonable. Put another

-26-

way, Ms. Clark failed to satisfy the first part of her "well-settled twofold burden." *Cox*, 800 F.3d at 1245. Consequently, she cannot defeat Deputy Bowcutt's defense of qualified immunity. *See Holmes*, 830 F.3d at 1134–35 ("[I]f the plaintiff fails to establish either prong of the two-pronged qualified-immunity standard, the defendant prevails on the defense.").

## IV

For the foregoing reasons, we **REVERSE** the district court's denial of summary judgment to Deputy Bowcutt and **REMAND** with instructions to the court to enter judgment in favor of Deputy Bowcutt on his defense of qualified immunity.[5]

ENTERED FOR THE COURT

Jerome A. Holmes
Circuit Judge

---

[5]  Ms. Clark previously filed a motion seeking leave to conventionally file a compact disc containing a video of Deputy Bowcutt's dashboard camera video in connection with her briefing of the jurisdictional question in this case. The motion was provisionally granted. However, Deputy Bowcutt filed the same video footage in his appendix. We therefore **deny** Ms. Clark's outstanding motion as moot.