FILED
United States Court of Appeals
Tenth Circuit

December 18, 2017

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
————————————————————

ESTATE OF RYAN RONQUILLO, by
and through Estate of April Sanchez,

    Plaintiff - Appellant,

v.

CITY AND COUNTY OF DENVER;
ERNEST SANDOVAL; JEFFREY
DIMANNA; JOEL BELL; LUKE
INGERSOLL; BRIAN MARSHALL;
DANIEL WHITE; TONI TRUJILLO,

    Defendants - Appellees.

No. 16-1476
(D.C. No. 1:16-CV-01664-CMA-NYW)
(D. Colo.)

————————————————————

**ORDER AND JUDGMENT**[*]
————————————————————

Before **KELLY**, **HARTZ**, and **HOLMES**, Circuit Judges.
————————————————————

Plaintiff-Appellant, the estate of Ryan Ronquillo, appeals from the district court's

judgment in favor of Defendants-Appellees Deputy Luke Ingersoll, Officers Ernest

Sandoval, Jeffrey DiManna, Daniel White, Brian Marshall, Joel Bell, and Toni Trujillo

(all individual defendants, or "officers"), and Defendant-Appellee City and County of

Denver. On appeal, Plaintiff challenges the district court's grant of a motion to dismiss

Plaintiff's Fourth Amendment claim for excessive force (resulting in Mr. Ronquillo's

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of
the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive
value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

death) and its municipality liability claim against the City and County of Denver.

Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## Background

This case arises from the 2014 shooting death of Ryan Ronquillo by law enforcement officers. On July 2, 2014, several officers were searching for and found Mr. Ronquillo, who was wanted on several warrants for aggravated motor vehicle theft. The officers located Mr. Ronquillo in a vehicle outside a funeral home.

A surveillance video captured what happened next. Mr. Ronquillo backed his vehicle into a parking place at the funeral home. Next, unmarked vehicles driven by Deputy Ingersoll and Officer Bell converged on Mr. Ronquillo's vehicle, blocking his ability to drive forward. At the same time, another officer, Officer Sandoval, arrived in a marked police car. The three officers ran to Mr. Ronquillo's vehicle. Officer Bell wore a vest with "Police" written on the front and Officer Sandoval was in uniform; however, Deputy Ingersoll was not in uniform. As they arrived at Mr. Ronquillo's vehicle, Deputy Ingersoll's parked vehicle moved backward — apparently hit by Mr. Ronquillo's vehicle attempting to move forward. Plaintiff alleges, however, that the officers acted with such force that they moved Deputy Ingersoll's vehicle forward.[1]

The video is unclear about exactly what transpired next. Plaintiff alleges that the officers attempted to forcibly remove Mr. Ronquillo from the vehicle. Plaintiff further

---

[1] The district court found that this allegation was contradicted by the video, i.e., Deputy Ingersoll's vehicle moved due to being hit by Mr. Ronquillo's vehicle. As discussed below, we need not resolve this issue.

2

alleges that the officers struck Mr. Ronquillo as they attempted to extract him. About five seconds later, Mr. Ronquillo attempted to escape, backing out over a median and outside of the video frame, while also making contact with various additional officers who had approached from the rear of the vehicle. Plaintiff alleges that at this point Mr. Ronquillo was still surrounded. Several seconds later, Mr. Ronquillo's vehicle then accelerated forward directly at the officers and back into the video frame. Although no one was injured, at least one officer darted out of the vehicle's path. It was at this point, as the vehicle moved toward the officers, that several of the officers opened fire, killing Mr. Ronquillo.

Mr. Ronquillo's estate brought a claim for excessive force under 42 U.S.C. § 1983 against the Officers and a municipal liability claim against the city of Denver. The district court granted Defendants' motions to dismiss pursuant to Rule 12(b)(6). The district court held that Plaintiff did not establish sufficient facts to demonstrate the Officers violated Mr. Ronquillo's Fourth Amendment rights, and thus found qualified immunity appropriate. Given the lack of a constitutional violation, the municipality claim also failed. This appeal followed.

## Discussion

### A.      Excessive Force Claim

Plaintiff contends that the district court erred in granting Defendants' motion to dismiss based on qualified immunity for failure to establish sufficient facts demonstrating a constitutional violation. We review de novo a district court's dismissal under Federal

Rule of Civil Procedure 12(b)(6). Dubbs v. Head Start, Inc., 336 F.3d 1194, 1201 (10th Cir. 2003). To survive this standard, a complaint must "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Well-pleaded allegations are accepted as true and "in the light most favorable to the nonmoving party." Butler v. Rio Rancho Public Schools Bd. of Educ., 341 F.3d 1197, 1199 (10th Cir. 2003) (citing Sutton v. Utah State Sch. for Deaf & Blind, 173 F.3d 1226, 1236 (10th Cir. 1999)). In ruling on a 12(b)(6) motion to dismiss, however, "courts may consider not only the complaint itself, but also attached exhibits." Smith v. United States, 561 F.3d 1090, 1098 (10th Cir. 2009). Accordingly, we accept as true Plaintiff's allegations except when directly contracted by the attached exhibits — in this case the video of the incident. See Bogie v. Rosenberg, 705 F.3d 603, 609 (7th Cir. 2013) ("When an exhibit incontrovertibly contradicts the allegations in the complaint, the exhibit ordinarily controls, even when considering a motion to dismiss."); Thomas v. Durastanti, 607 F.3d 655, 672 (10th Cir. 2010) (holding in the summary judgment context that a court may reject allegations in a plaintiff's complaint when video evidence "blatantly contradicts" those allegations).

When a defendant moves to dismiss based on qualified immunity, we conduct a two-part inquiry. First, we consider whether the plaintiff has sufficiently "asserted a violation of federal law." Currier v. Doran, 242 F.3d 905, 917 (10th Cir. 2001). If there is such a violation, we must also consider whether "the right was sufficiently clear that a reasonable official would have understood that his conduct violated the right." Id. at 923. We are also mindful of the Supreme Court's admonition regarding "the importance of

4

resolving immunity questions at the earliest possible stage in litigation." Pearson v.

Callahan, 555 U.S. 223, 232 (2009) (quoting Hunter v. Bryant, 502 U.S. 224, 227

(1991)).  The Supreme Court has made clear that the qualified immunity doctrine is

designed to ensure that "insubstantial claims against government officials will be

resolved prior to discovery."  Id. at 231–32 (alteration and quotation marks omitted)

(quoting Anderson v. Creighton, 483 U.S. 635, 640 n.2 (1987)).  As we discuss below,

Plaintiff's excessive force claim fails under both elements of the qualified immunity

analysis.

## 1. Constitutional Violation

According to Plaintiff, Defendant Officers violated Mr. Ronquillo's constitutional

rights through the use of excessive force in two instances: first, when the officers

attempted to forcibly remove Mr. Ronquillo from the vehicle; and second, when the

officers used deadly force against Mr. Ronquillo.  The district court found that Plaintiff

failed to allege sufficient facts to prove a constitutional violation.[2]  This claim is

governed by the Fourth Amendment's reasonableness standard.  Plumhoff v. Rickard,

134 S. Ct. 2012, 2020 (2014).

The test for reasonableness was laid out by the Supreme Court in Graham v.

Conner, 490 U.S. 386 (1989).  Graham stated that courts must balance "the nature and

---

[2] Although the district court addressed the first instance of excessive force only in a footnote, we consider both here.  Order Granting Defendants' Motion to Dismiss, Estate of Ryan Ronquillo v. City and Cty. of Denver, No. 16-cv-01664-CMA-KMT, at *12 n.3 (D. Colo. July 12, 2017).

quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." Id. at 396 (quotation marks omitted) (quoting Tennessee v. Garner, 471 U.S. 1, 8 (1985)). When evaluating the reasonableness of the officers' actions, courts should consider "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether the suspect is actively resisting arrest or attempting to evade arrest by flight." Id. The district court considered these factors and the totality of the circumstances involving Mr. Ronquillo and concluded that even accepting Plaintiff's allegations as true and construing the video in the light most favorable to Mr. Ronquillo, there were not sufficient facts to demonstrate a Fourth Amendment violation. We agree.

The first Graham factor, the severity of the crime, favors the estate. The officers were pursuing Mr. Ronquillo for arrest warrants related to aggravated vehicle theft. However, as the district court noted, Defendants do not contend that any of Mr. Ronquillo's alleged crimes were accompanied by violence. We thus weigh this factor in favor of the estate.

The second and third Graham factors favor the officers. We consider these factors together because much of the facts and analysis overlap. The second Graham factor considers whether the suspect posed an immediate threat to the safety of the officers or others, and the third Graham factor considers whether the suspect is actively resisting arrest or attempting to evade arrest by flight.

We analyze these factors at the precise moment that the officer used force. See Thomas, 607 F.3d at 664. In Thomas, we held that "if threatened by weapon (which may

6

include a vehicle attempting to run over an officer), an officer may use deadly force." Id. Moreover, "the 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham, 490 U.S. at 396. "[O]fficers are often forced to make split-second judgments — in circumstances that are tense, uncertain, and rapidly evolving — about the amount of force that is necessary in a particular situation." Id. at 397. A reasonable perception of imminent danger, even if mistaken, may be consistent with the reasonable use of deadly force. Thomas, 607 F.3d at 666.

Mere seconds after the officers arrived at Mr. Ronquillo's vehicle, Mr. Ronquillo's vehicle collided with Deputy Ingersoll's SUV. Although Plaintiff alleges in the complaint that the officers were responsible for this movement as they approached Mr. Ronquillo's vehicle, the district court found that assertion plainly contradicted by the video. We need not resolve this point, because we consider the viewpoint of the reasonable officer. As we have previously recognized, even if "the video does not capture the entire episode," we can still ascertain the objective reasonableness of the officer. Thomas, 607 F.3d at 664–65. Given the rapid nature of this situation, the officers could have reasonably believed that when Mr. Ronquillo's vehicle moved into Deputy Ingersoll's SUV, he was attempting to escape and would have possibly hit officers in the process[3] — the third factor in the Graham analysis.[4] See Saucier v. Katz,

---

[3] In fact, when Mr. Ronquillo backed his vehicle away from the officers attempting to extract him, he did hit several officers.
[4] Plaintiff contends Mr. Ronquillo did not know the officers were policemen. However, the video shows at least two officers who can be identified from their clothing as

7

533 U.S. 194, 205 ("If an officer reasonably, but mistakenly, believes that a suspect was likely to fight back . . . the officer would be justified in using more force than in fact was needed."). Accordingly, any force the officers used to effectuate the arrest and extract Mr. Ronquillo from the vehicle, even taking the Plaintiff's allegations as true, was reasonable.

Several seconds after Mr. Ronquillo crossed over the median and outside the scope of the video, he drove his vehicle back into the space where the officers were standing. At this point, the officers fired at Mr. Ronquillo — the second alleged instance of excessive force. Similar to the first instance, the officers could have reasonably believed that at this precise moment, Mr. Ronquillo was putting several officers in danger. See Thomas, 607 F.3d at 665 ("[I]t goes without saying that an officer in close quarters is no match for a two-ton vehicle."). In fact, the video shows one officer jump out of the way of the vehicle mere seconds before Mr. Ronquillo returns. Therefore, in considering the factors in their totality, at the two precise moments when force was used by the officers, it was objectively reasonable to use force to stop Mr. Ronquillo (1) from fleeing and (2) later possibly running over several officers. The latter two Graham factors weigh strongly in favor of Defendants.

Plaintiff also contends that the officers are liable because their initial excessive force when trying to remove Mr. Ronquillo from the vehicle prior to the shooting caused

policemen. Officer Sandoval approached Mr. Ronquillo's vehicle in uniform before the officers attempted to extract him. Thus, we agree with the district court that the video directly contradicts Plaintiff's assertion that Mr. Ronquillo did not know the officers were policemen.

8

the need for the later deadly force.  See id. at 668.  However, we agree with the district court's conclusion that the officers' initial attempts to extract Mr. Ronquillo were too attenuated to support that theory of causation.  Mr. Ronquillo was able to back his car away from the officers and over the median, but then stopped, put his car in drive, and accelerated back toward the officers.  See Sevier v. City of Lawrence, 60 F.3d 695, 699 n.8 (10th Cir. 1995).

Even accepting Plaintiff's allegations as true and acknowledging the difficult and unfortunate outcome of this chain of events, the totality of the circumstances in both instances of excessive force — in light of the Graham factors — favor Defendants.  And although we recognize that this case arises at the motion to dismiss stage, a high bar, we are also mindful of the duty to resolve insubstantial claims without discovery where possible.  Pearson, 555 U.S. at 231–32.  Here, Plaintiff has not presented sufficient facts to establish that the officers violated Mr. Ronquillo's constitutional rights.

### 2. Clearly Established

Even assuming that the officers violated Mr. Ronquillo's constitutional right against excessive force, the law was not clearly established at the time that the officers' conduct was unlawful.  The Supreme Court has made apparent the high bar to prove clearly established law, stating that "existing precedent must have placed the statutory or constitutional question beyond debate." Mullenix v. Luna, 136 S. Ct. 305, 308 (2015) (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011)).  Moreover, "if a reasonable officer might not have known for certain that the conduct was unlawful — then the

9

officer is immune from liability." Ziglar v. Abbasi, 137 S. Ct. 1843, 1867 (2017) (emphasis added).

Plaintiff first argues that the gratuitous use of force against a suspect not resisting arrest is clearly established. Aplt. Br. at 21. "All officers know in the Tenth Circuit that they cannot just physically assault a person peacefully sitting in their car, even if they are suspected of a crime." Id. at 23. For this proposition, Plaintiff cites to Davis v. Clifford, 825 F.3d 1131, 1137 (10th Cir. 2016), which held that it is clearly established that "the use of disproportionate force to arrest an individual who has not committed a serious crime and who poses no threat to herself or others constitutes excessive force." However, this case is readily distinguishable from Davis. Mr. Ronquillo appeared to drive into an officer's vehicle when the officers arrived on the scene. This could have led reasonable officers to believe that Mr. Ronquillo was attempting to flee and posed a threat to the other officers.[5] Moreover, specificity when describing clearly established law is "especially important in the Fourth Amendment context, where the Court has recognized that '[i]t is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts.'" Mullenix, 136 S. Ct. at 308 (quoting Saucier, 533 U.S. at 205). Plaintiff has failed to identify any specific authority that an officer uses excessive force when he or she attempts to forcibly extract someone from a vehicle and reasonably believed the suspect was attempting to flee.

---

[5] As discussed above, this is true regardless of whether Mr. Ronquillo actually did drive into Deputy Ingersoll's SUV or, as Plaintiff alleges, several of the officers simply moved the vehicle.

10

Plaintiff also contends that the law is clearly established that the officers' use of deadly force against Mr. Ronquillo was unlawful. Thomas, decided in 2010, is the go-to case. In Thomas, we held that an officer was entitled to qualified immunity on a claim of excessive force when the suspects were fleeing at low speeds and the officers were in danger of physical harm. 607 F.3d at 668. We have followed Thomas in subsequent cases. See Carabajal v. City of Cheyenne, 847 F.3d 1203, 1211 (10th Cir. 2017); Clark v. Bowcutt, 675 F. App'x 799 (10th Cir. 2017). At the same time, we have cautioned that such qualified immunity cases "remain[] heavily dependent on the claim in light of the unique circumstances of each case." Carabajal, 847 F.3d at 1211. If anything, this suggests that deadly force can be used against the driver of a slow moving vehicle where an objectively reasonable officer would perceive (or mistakenly, but reasonably perceive) that a suspect is attempting to injure the officer or others in the vehicle's path.

Plaintiff relies mainly on Allen v. Muskogee, 119 F.3d 837 (10th Cir. 1997), for clearly established law applicable here. There, an officer approached a suicidal plaintiff's vehicle and then, after an altercation, proceeded to fire into the vehicle. Id. at 841. The court found that when an officer's reckless actions are so "immediately connected" to the suspect's threat of force, the initial actions could create the later use of deadly force. Id. This case is distinguishable from Muskogee because, for one, the officers' initial actions discussed above were reasonable under the circumstances. Second, Mr. Ronquillo backed away from the officers attempting to extract him from the vehicle, and then returned, leading us to the conclusion that the officers' conduct was not "immediately connected" to the second claim of excessive force.

11

Accordingly, and in light of the Supreme Court's emphasis that clearly established law "should not be defined 'at a high level of generality,'" White v. Pauly, 137 S. Ct. 548, 552 (2017) (quoting Ashcroft, 563 U.S. at 742), qualified immunity is appropriate.

**B.     Municipal Liability Claim**

To establish municipal liability under § 1983, Plaintiff must prove a constitutional violation by the individual officers.  In other words, "absent a constitutional violation by the individual police officers whose conduct directly caused plaintiffs' injuries, there can be no municipal liability."  Trigalet v. City of Tulsa, 239 F.3d 1150, 1156 (10th Cir. 2001).  Because we hold that there was no constitutional violation by the officers, Plaintiff's municipality claim also fails.

AFFIRMED.

Entered for the Court


Paul J Kelly, Jr.
Circuit Judge
